[No. 45325.   En Banc.   November 9, 1978.]

The City of Bellevue, et al, *Respondents,* v. King
County Boundary Review Board, et al,
*Appellants.*

*Slade Gorton, Attorney General,* and *Walter E. Webster, Jr., Special Assistant,* for appellant King County Boundary Review Board.

858

*John D. Lawson, City Attorney,* for appellant City of Redmond, et al.

*Lee Kraft, City Attorney,* and *Richard Gidley, Assistant,* for respondents.

UTTER, J.—This is an appeal from a multitude of actions surrounding the annexation of territory by the City of Redmond and the City of Bellevue. The principal parties here are the two cities and the King County Boundary Review Board (board). The Evergreen East Corporation is also involved in this litigation, with its interests on appeal identical to those of Redmond. There are three issues: (1) Was the board's jurisdiction invoked in a timely manner? (2) May interrogatories be directed to the members of the board when its decision is appealed to the superior court? (3) Did the State Environmental Policy Act (SEPA) apply to the board's decision, and if so, did the board fail to comply with it? A different trial judge ruled on each of these issues, but each question was answered affirmatively by the trial court. The trial court's decisions are affirmed in all respects.

This tangled controversy officially began on March 16, 1973, when Redmond filed with the board a notice of intention to annex largely unoccupied territory of approximately 260 acres lying between its borders and those of Bellevue. Well known to all parties were plans by the owner of substantial portions of this land, the Evergreen East Corporation, to build a large shopping mall and office complex. Redmond, apparently more favorably disposed to the project than Bellevue, received an annexation request from the corporation, and the Redmond proposal followed.

Six days after Redmond's initial filing, on March 22, the board determined that the legal description of the land proposed for annexation by Redmond was defective, and so informed Redmond. The board received Redmond's corrected description on April 5, 1973, and deemed the filing effective as of that date.

On June 1, Bellevue filed a request for review of Redmond's proposed annexation. On September 13, 1973, Bellevue filed two notices of intention to annex land. One of those proposals included a portion of the Evergreen East center not included in the Redmond proposal. Bellevue also has indicated an interest in annexation of the entire Evergreen East territory, but never has filed a formal proposal to that effect.

After some preliminary action, the three annexation proposals were consolidated and several hearings were held. Although Bellevue and the board's staff urged the necessity of an environmental impact statement (EIS), Redmond and Evergreen East urged to the contrary, and the board's attorney advised the board that neither an EIS nor a threshold assessment was necessary because SEPA did not apply to the board's action. On January 10, 1974, without any formal environmental assessment, the board approved all three annexation proposals.

Bellevue appealed the approval of the Redmond annexation, as did a property owner in the area who has withdrawn from the case upon the appeal to this court. The Evergreen East Corporation appealed all annexation approvals. Redmond and Evergreen East each intervened in the appeals of the other parties, and all actions were consolidated for superior court review.

From that time on, among the myriad maneuvers, motions, and actions, the following events are important to this appeal: (1) Redmond brought a summary judgment motion to have its annexation declared approved by operation of RCW 36.93.100,[1] alleging that no objections to the

---

[1] "The board shall review and approve, disapprove, or modify any of the actions set forth in RCW 36.93.090 when any of the following shall occur within sixty days of the filing of a notice of intention:

"(1) The chairman or any three members of the boundary review board files a request for review;

"(2) Any governmental unit affected files a request for review;

"(3) A petition requesting review is filed and is signed by

"(a) five percent of the registered voters residing within the area which is being considered for the proposed action (as determined by the boundary review

annexation or requests for review had been received by the board within the 60 days from the actual date of filing. This motion was denied on July 31, 1974. (2) Bellevue served interrogatories upon members of the board in an attempt to confirm facts which it alleged would prove the bias of the board or violation of the appearance of fairness doctrine. The board moved to strike the interrogatories on the ground that the superior court, acting under RCW 36.93-.160, may consider only materials in the record on appeal from the board's ruling, and that facts outside the record are inadmissible, rendering interrogatories improper. The motion to strike interrogatories was denied on January 30, 1975. (3) Bellevue brought a motion for summary judgment to invalidate the annexations for failure of the board to comply with the requirements of SEPA. This motion was granted on December 23, 1975, and the cases were remanded to the board for action in compliance with SEPA. The board undertook a cursory reaffirmance of its decision not to file an environmental impact statement without obtaining any additional environmental information. The board then filed a motion for reconsideration of the summary judgment on the SEPA issue. That motion was denied on February 17, 1976.

On this appeal, certified to this court by the Court of Appeals, Redmond contests the board's jurisdiction to review the annexation. The board contests the propriety of the interrogatories filed on appeal. Both Redmond and the board contest the applicability of SEPA in this action. Bellevue supports each decision of the trial court.

The parties have expended all their efforts on this appeal on the Redmond annexation, although our decision on SEPA would appear to apply to Bellevue's annexations as

board in its discretion subject to immediate review by writ of certiorari to the superior court); or

"(b) an owner or owners of property consisting of five percent of the assessed valuation within such area.

"If a period of sixty days shall elapse without the board's jurisdiction having been invoked as set forth in this section, the proposed action shall be deemed approved." RCW 36.93.100.

well. Thus, we discuss the issues in the context of the Redmond annexation only, with the recognition that to the extent applicable our decision involves the Bellevue annexations as well.

## I. The Board's Jurisdiction

RCW 36.93.100 provides that an annexation proposal is "deemed approved" by the board if no action contesting the annexation is taken within 60 days of the time of filing. Bellevue's request for review of Redmond's annexation proposal came more than 60 days after the date that Redmond initially filed its notice of intention to annex, but less than 60 days after the "effective filing date" assigned to the proposal by the board. Redmond contends that the board's practice of assigning an effective filing date is illegal and outside the board's statutory authority, and that because no request for review was made within the 60 days following the original filing, the Redmond annexation is irrevocably accomplished and the board no longer has any jurisdiction to consider that annexation.

We do not agree. Under RCW 36.93.200 the board is granted the power to "adopt rules governing the formal and informal procedures" relating to its duties and powers. Under that authority, the board has a long–standing rule that a filing date shall be assigned to a notice of intention to annex as of the date that a "legally sufficient" notice is filed. This rule is presumptively valid, and is reviewed only for abuse of discretion or rule making exceeding statutory authority. *Weyerhaeuser v. Department of Ecology,* 86 Wn.2d 310, 545 P.2d 5 (1976); *Lindsay v. Seattle,* 86 Wn.2d 698, 548 P.2d 320 (1976).

We find no abuse of discretion or action exceeding the board's statutory power. In light of the purposes of the 60–day period, the administratively adopted rule appears to be a particularly rational procedural rule. The 60–day period serves two purposes: (1) It provides those initiating annexation proposals with a specified date upon which they can proceed on the knowledge of an approved annexation,

and (2) it provides notice to those interested in the annexation, and allows such persons to challenge the annexation. The board's rule advances the latter purpose without compromising the former. The notice purpose is not fully carried out until the annexation proposal *accurately* describes the territory to be annexed in compliance with RCW 36.93.130.

In this case, it is clear that the Redmond proposal contained errors in legal description, errors in which Redmond concurred and which Redmond corrected. Redmond urges that the errors were minor. This is of little consequence once it is admitted that the errors did exist. The board's rule is reasonable, and because the board has rule–making power under RCW 36.93.200 and exercised it in a manner which furthers the purposes of the annexation statute, adoption of this rule is within the statutory authority of the board. As a result, Bellevue properly requested review and thereby invoked the jurisdiction of the board within the time limits prescribed by RCW 36.93.100.

## II. INTERROGATORIES

■ RCW 36.93.160(5) provides in part, "On appeal the superior court shall not take any evidence other than that contained in the record of the hearing before the board." The board incorrectly argues that this section precludes the use of interrogatories by Bellevue on the appeal to superior court. This section refers to evidence bearing on the substantive decision itself—the facts and circumstances of the proposals before the board—rather than facts relating to the fairness of the process by which the board's decision is reached. Even if this section were to be construed more broadly, it could not preclude this court from exercising our inherent power of review to conduct independent inquiry into allegations of bias and appearance of unfairness. *State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973).

■ It is asserted by the board that the case of *King County Water Dist. 54 v. King County Boundary Review*

*Bd.,* 87 Wn.2d 536, 554 P.2d 1060 (1976), has already precluded the use of extra–record evidence in challenges based on bias or appearance of fairness. While language in a footnote in that case could support the board's assertion, we held in that case that, even considering the extra–record evidence, there was no demonstration of violation of the appearance of fairness. This case presents the first opportunity for the court to rest a decision on the propriety of extra–record evidence, and we hold that under the specific circumstances present in this case, interrogatories are not automatically improper.

Bellevue did not discover facts suggesting violation of the appearance of fairness until after the board had completed its action. This fact is essential to Bellevue's ability to raise the issue at this time; a litigant who had been involved in controversy before the board would not be allowed to challenge the appearance of fairness or the bias of the board without having raised the issue in the proceeding before the board if that litigant had, at the time of the board's proceeding, the information forming the basis of that litigant's fairness or bias challenge. A party with such information may not sit back, hoping to achieve a desirable result from the board despite the perceived unfairness, and then use that information to challenge an adverse result. *Hill v. Department of Labor & Indus.,* 90 Wn.2d 276, 580 P.2d 636 (1978); *Choate v. Swanson,* 54 Wn.2d 710, 344 P.2d 502 (1959). A party should raise allegations of bias or appearance of unfairness at the earliest possible stage of proceedings, although formal resolution of that issue may often require waiting until the parties can compel answers to interrogatories under the authority of the reviewing superior court.

Our appearance of fairness doctrine, though related to concerns dealing with due process considerations, is not constitutionally based. Nonconstitutional issues, as well as most constitutional ones, may not be raised for the first time on appeal in a regular civil appeal from a superior court judgment. *See, e.g., Robinson v. Peterson,* 87 Wn.2d

665, 555 P.2d 1348 (1976). However, there is sufficient difference in the nature of board proceedings and appeals therefrom *to* the superior court to warrant departure from this rule established for appeals *from* the superior court. First, although the board's decisions are quasi–judicial, cases before the board require public hearings, and are not merely adjudications between opposing parties of record, as are superior court proceedings. Thus, objections to procedural irregularities are more easily considered and dealt with by the superior court after an appeal to that court identifies the parties and sets up their proper alignment. Additionally, there are established procedural mechanisms for challenging the impartiality of superior court judges in a normal civil proceeding, RCW 4.12.040–.050. RCW 36.93, however, provides no specific means to challenge the composition of the board. Finally, while CR 60(b) specifically provides a means for vacation of judgments, there is no comparable provision under RCW 36.93 for obtaining relief from board action based on the later discovery of facts which call into question the impartiality or fairness of that action. As a result, the opportunity to raise procedural issues such as bias or violation of the appearance of fairness is more limited and uncertain in proceedings before the board than it is in the normal civil suit.

While we find nothing per se improper with the use of interrogatories on appeal to the superior court, we will not sanction the use of this litigation tool to allow a disappointed litigant to harass board members by entering into a wholesale search for a basis upon which to object to a decision of the board on the ground of bias or appearance of unfairness. Unless the party proposing the interrogatories can demonstrate some particular and definite basis for an allegation of bias or unfairness, and can demonstrate that the interrogatories set forth are designed to provide information relating to that allegation, the interrogatories are improper. Thus, although the issue is not before this court, some of the interrogatories proposed—addressed, as they are, to all members of the board including those against

whom no allegations of bias or unfairness have been made—may be improper.

There is no problem raised by Bellevue's addressing the interrogatories to individual board members in this situation. Bellevue's challenge is to the participation of individual members in this decision; it is not challenging the board as a unit. It is to everyone's advantage for Bellevue to pinpoint its objections through individual members of the board. Board members are sufficiently connected to the litigation in which the board is involved in this instance to qualify as parties under CR 33.

## III. SEPA

Redmond and the board argue three points in opposition to the trial court's ruling that SEPA requirements have not been met. First, they argue that the board was not subject to SEPA at the time of the annexation approval. Second, they urge that even if SEPA applied at that time, the board made adequate assessment of the environmental effects of the annexation. Finally, they assert that the board's determination that no EIS was required was not arbitrary and capricious or clearly erroneous. It is unnecessary to assess their third argument because we hold they are in error regarding both the applicability of SEPA and the adequacy of the board's assessment.

The argument of the inapplicability of SEPA is uniquely ill founded. RCW 43.21C.060 expressly provides, "The policies and goals set forth in this chapter are *supplementary* to those set forth in existing authorizations of all branches of government of this state, including state agencies, municipal and public corporations, and counties." (Italics ours.) This court has held that the requirements of SEPA "overlay" other statutory schemes. *Sisley v. San Juan County*, 89 Wn.2d 78, 569 P.2d 712 (1977). Thus, an environmental assessment *in addition* to consideration of factors set out in RCW 36.93.170–.180 is made mandatory upon the board by the enactment of SEPA.

Further, case law at the time of this action demonstrated the pervasive impact of SEPA. *See Stempel v. Department of Water Resources,* 82 Wn.2d 109, 118, 508 P.2d 166 (1973) (SEPA a "mandate to every state and local agency and department"); *Merkel v. Port of Brownsville,* 8 Wn. App. 844, 509 P.2d 390 (1973); *Juanita Bay Valley Community Ass'n v. Kirkland,* 9 Wn. App. 59, 510 P.2d 1140 (1973).

Redmond and the board cite recently adopted administrative guidelines to support their contention that the board's actions were not subject to SEPA at all. They cite exemptions provided in current regulations, as well as the "lead agency" regulations, to demonstrate that the board would have no responsibility under SEPA today. *See* WAC 197–10–170, –200, –205. However, these regulations were not in effect until 1976, while the actions here under review took place in 1973. These newer regulations rearranged and redefined certain procedures under SEPA, although they had little if any substantive impact. Redmond and the board attempt to hold onto old procedural guidelines which are beneficial to their position while simultaneously asserting the applicability of all new regulations which are to their benefit. In so doing, they would alter the substantive impact of SEPA in this case. It is clear that the new regulations would require *someone* to make a threshold determination in this annexation action, *see* WAC 197–10–040(2), although the board might not be the body bearing the primary responsibility. It is equally clear under the case law and old regulations that a threshold determination was required in an action of this kind at the time of this annexation approval in 1973, and that each agency passing upon a proposal, including this board, was responsible for evaluating and supplementing environmental decisions and reports. *See* Department of Ecology, Guidelines for Implementation of the State Environmental Policy Act (1972).

The end result of accepting the patchwork arrangement of old and new regulations urged by Redmond and the board would be to reach a conclusion that no threshold

determination was necessary by anyone at any time in this case. Because this result would not obtain under either the currently effective regulations or those in effect in 1973, we cannot accept this claim. The board's action was subject to SEPA, and the board was charged with seeing that a threshold decision was made.

Appellants also assert that, even if the board was required to make a threshold determination, the board did so and thereby complied with SEPA. We do not find adequate analysis and consideration of environmental factors in the record presented to this court to sustain this assertion.

The burden is upon the governmental body subject to SEPA to show that it made a threshold determination which "demonstrate[s] that environmental factors were considered in a manner sufficient to be a prima facie compliance with the procedural dictates of SEPA." *Lassila v. Wenatchee,* 89 Wn.2d 804, 814, 576 P.2d 54 (1978). *See also Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 526 P.2d 897 (1974). However, at the time this action took place, case law made clear that the threshold determination of nonsignificance did not have to conform to any particular format, as long as the record showed sufficient deliberations and consideration in addition to a final decision. *Narrowsview Preservation Ass'n v. Tacoma, supra.*

The record fails to show sufficient deliberation and consideration and contains little other than the conclusion that an EIS is unnecessary. Indeed, the record strongly refutes the contention that a threshold determination was made. Counsel for the board, in response to the board's inquiry, specifically advised the board that neither an EIS nor an environmental assessment of any kind was necessary. The materials to which Redmond and the board refer us contain nothing which would suggest that the board did anything other than accept this conclusion; they reveal a naked decision not to take any action under SEPA, a decision which is devoid of any serious consideration of environmental factors. We note particularly the complete

absence of any suggestion in the record that the board made the slightest serious inquiry into the effect which the alternatives before it might have upon the scope and nature of the Evergreen East development. Even a cursory reading of the record suggests that the fate of the Evergreen East project—at least to the extent of the pace and scale of the project, and the requirements and restrictions placed upon the developers by the responsible municipality—may be bound up with whether Redmond's annexation goes through, or the land remains in King County's jurisdiction, or even becomes annexed to Bellevue. It is clear that the Evergreen East project itself will have massive environmental impact, and any decision which will affect that development must necessarily involve consideration, to the extent possible, of the nature of the effect that such decision will have.

We express no opinion as to whether an assessment of environmental factors which includes discussion of this possibility must result in a decision to prepare a full EIS. Not every annexation proposal automatically requires filing of an EIS. *Carpenter v. Island County,* 89 Wn.2d 881, 577 P.2d 575 (1978). It is possible that the board may properly find that the impact on the project will be minor no matter what annexation decision is made, and it may be that precise information on this subject will be unavailable. Nevertheless, the board was required at least to consider, as fully as possible, this and all other environmental factors involved in this annexation before approving it. The board did not meet its responsibilities; it failed to make an adequately based threshold determination.

The board did assess the project in compliance with its statutory mandate under RCW 36.93. However, this falls short of the independent and comprehensive assessment of environmental factors which must be made under SEPA.

We do not reach the issue of the necessity of an EIS in this case. We can only review threshold decisions of agencies under our "clearly erroneous" and "arbitrary and capricious" standards; we cannot make an independent

decision when the agency required to make that decision defaults. *Lassila v. Wenatchee, supra.*

## IV. DISPOSITION

The superior court's judgment voiding the board's approval of these annexations is affirmed. The annexation proposals are remanded to the board which is to be responsible for overseeing compliance with SEPA. Because a change in regulations has occurred since the board originally acted upon these proposals, this compliance should now be accomplished by the board's insistence upon action under current SEPA guidelines by the municipalities, and by the board's review of that action and correction of deficiencies.

Inasmuch as we have disposed of this case on the SEPA issue, the board is not charged with answering the interrogatories at issue unless and until this case again reaches the superior court. More specific and individualized objections to these interrogatories may be evaluated by the superior court at that time, guided by the basic principles set forth in section II of this opinion.

WRIGHT, C.J., and STAFFORD, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

HAMILTON, J. (dissenting)—I dissent from part III of the majority opinion.

The King County Boundary Review Board is a creature of statute, RCW 36.93.030. Its purpose is simply to review and approve, disapprove or modify a limited type of action. RCW 36.93.100. Among the reviewable actions are changes in the boundary of any city or the change in a sewer system boundary.

The majority states in somewhat conclusory language that it is clear a threshold determination is required in actions of this kind. I cannot agree with this conclusion. It is unreasonable from a practical and policy standpoint to apply the State Environmental Policy Act of 1971 (SEPA) to the board's annexation actions.

In *Carpenter v. Island County,* 89 Wn.2d 881, 577 P.2d 575 (1978), we reviewed the need for a threshold determination and environmental impact statement (EIS). That case involved annexation of territory to a sewer district for use as a sewer district. In *Carpenter,* we noted that recent, but not controlling, administrative regulations indicate threshold determinations should be required at the earliest point in the planning and decision–making·process when the principal features of a proposal and its impacts upon the environment can be *reliably* identified.

This is an appropriate standard. Requiring a threshold determination at the point when impacts can be reliably identified operates to fulfill the purposes of SEPA without creating a needless barrier in situations where an undertaking is minor. And, indeed, it was the intent of the legislature to require an environmental evaluation only where major action is contemplated. RCW 43.21C.030.

The inclusion of property by annexation does nothing to change the basic character of the property. Annexation by itself simply brings about a change in the imaginary lines marking a government's jurisdictional limits. It is absurd to say that the environment is affected merely because a city limits sign is relocated. Further, in the ordinary case, annexation well precedes the point when it is possible to reliably identify environmental impacts. Identifiable impacts attend not annexation, but rather actions which occur subsequently, such as: zoning for new use or the issuance of a development permit. Importantly, prior to the completion of the annexation process all development and zoning plans are necessarily only speculative. A government obviously is without power to control the use of land not subject to its jurisdiction. But after land is subjected to a government's jurisdiction through *completed* annexation, speculative plans can become concrete proposals which require certain zoning or permits. At this point it is possible to reliably identify environmental impacts. A threshold determination and a probable EIS would then appear to be necessary and indeed reasonable.

From a policy standpoint, subjecting simple actions, such as annexation, to SEPA clearly will result in stagnation of responsible growth and development. As a practical matter, requiring threshold determinations at such an early stage will create additional and extended litigation driving up the costs of worthy and needed projects. Eventually, much development will be abandoned, not because a project was rejected by an authorized body, but because it has been delayed beginning with a proposed annexation, and thereafter over and over again by contests and litigation requiring costly additional and, in some instances, useless acts. SEPA, if it has not already, will certainly become a tool for those who oppose annexation for purely political or economic reasons.

The burden of the majority's decision falls not upon those who have reaped the benefits of pre–SEPA development and now carry the banner of environmentalism, but upon those less fortunate. And the ultimate loser in what can best be described as this war of attrition will be the taxpayers. They will have to support the increasing costs of government services to underdeveloped or deteriorating areas, since roadblocks to business development will effectively preclude a local jurisdiction from expanding its tax base and alleviating the burden on the individual taxpayer.

For the reasons stated, I file this dissent.

ROSELLINI and HICKS, JJ., concur with HAMILTON, J.

Reconsideration denied February 15, 1979.