[No. 47358–7. En Banc. May 7, 1981.]

NISQUALLY DELTA ASSOCIATION, ET AL, *Petitioners*, v.
THE CITY OF DUPONT, ET AL, *Respondents*.

*Henry E. Lippek* and *Theodore Paul Hunter,* for petitioners.

*Hillis, Phillips, Cairncross, Clark & Martin, P.S.,* by *Glenn J. Amster* and *Louis D. Peterson,* for respondents.

STAFFORD, J.—This case deals with the breadth of a statutory grant of standing to appeal the decision of a boundary review board. The trial court and the Court of Appeals held petitioners lacked standing since they did not come within the terms of the statute. We affirm.

The Parties

Weyerhaeuser Company, intervenor–respondent in this action, owns over 3,000 acres within the incorporated boundaries of respondent City of DuPont. The land was purchased in 1976 for the purpose of constructing a log export facility. After preliminary planning, the company determined a better location for the shipping dock would be on an adjacent parcel of land outside the boundaries of DuPont. This parcel was purchased, and Weyerhaeuser petitioned DuPont for annexation of it and other parcels owned by Weyerhaeuser. In compliance with the petition DuPont, acting pursuant to RCW 35A.14.330, prepared a proposed zoning regulation to become effective upon annexation. It would change the zoning classification from "general" to "industrial" and the shoreline designation from "conservancy" to "urban." Petitioners have contested the rezoning in a separate suit.

Petitioners herein are Nisqually Delta Association, a nonprofit organization; the Washington Environmental Council, a nonprofit organization; and Rick Anderson and Dorothy Dufrin, local residents. They are concerned that the construction and operation of a log export facility only one–half mile from the Nisqually Delta Wildlife Refuge will threaten continued survival of this area of statewide significance. *See* RCW 90.58.030(2)(e)(ii)(A) (Shoreline Management Act of 1971). Some of the petitioners own real property and reside in the city of DuPont; others reside near the proposed facility. It is alleged these petitioners would be adversely affected based upon the Environmental Impact Statement of the project. Petitioners view the annexation as a significant, integral step toward actual construction of the project.

County boundary review boards, including respondent Pierce County Review Board, were established to review local government actions regarding boundaries. The legislative purpose is set forth in RCW 36.93.010:

> The legislature finds that in metropolitan areas of this state, experiencing heavy population growth, increased

problems arise from rapid proliferation of municipalities and haphazard extension of and competition to extend municipal boundaries. These problems affect adversely the quality and quantity and cost of municipal services furnished, the financial integrity of certain municipalities, the consistency of local regulations, and many other incidents of local government. Further, the competition among municipalities for unincorporated territory and the disorganizing effect thereof on land use, the preservation of property values and the desired objective of a consistent comprehensive land use plan for populated areas, makes it appropriate that the legislature provide a method of guiding and controlling the creation and growth of municipalities in metropolitan areas so that such problems may be avoided and that residents and businesses in those areas may rely on the logical growth of local government affecting them.

RCW 36.93.090 empowers these boards to review any proposed actions within the county which pertain to:

(1) The creation, dissolution, incorporation, disincorporation, consolidation, or change in the boundary of any city, town, or special purpose district, except that a board may not review the dissolution or disincorporation of a special purpose district which was dissolved or disincorporated pursuant to the provisions of chapter 36.96 RCW; or

(2) The assumption by any city or town of all or part of the assets, facilities, or indebtedness of a special purpose district which lies partially within such city or town; or

(3) The establishment of or change in the boundaries of a mutual water and sewer system or separate sewer system by a water district pursuant to RCW 57.08.065; or

(4) The extension of permanent water or sewer service outside of its existing corporate boundaries by a city, town, or special purpose district.

Factors to be considered by a board in reaching a decision and a board's objectives in reaching a decision are set out in RCW 36.93.170 and .180 respectively. In addition, a board is required to make an environmental assessment pursuant to the State Environmental Policy Act of 1971 (SEPA) "overlay". *Bellevue v. King County Boundary*

*Review Bd.,* 90 Wn.2d 856, 865, 586 P.2d 470 (1978).

### THE SUIT

In this case, the Pierce County Boundary Review Board undertook a review of DuPont's proposed annexation on its own motion. RCW 36.93.100. A hearing was held pursuant to RCW 36.93.160 in which petitioners and others took part. The Board had before it a copy of the Environmental Impact Statement (EIS) developed for the proposed log export facility. It had been prepared by DuPont, the lead agency. The adequacy of the EIS is being contested in a separate action brought by petitioners, and is not a part of this suit.

The Board approved DuPont's annexation of the 30–acre parcel. Thereafter petitioners appealed to the Superior Court pursuant to RCW 36.93.160(5), which states in pertinent part:

Decisions [of the Board] shall be final and conclusive unless within ten days from the date of said action a governmental unit affected by the decision *or any person owning real property or residing in the area affected by the decision* files in the superior court a notice of appeal.

*The filing of such notice of appeal* within such time limit *shall stay the effective date of the decision of the board* until such time as the appeal shall have been adjudicated or withdrawn. On appeal the superior court shall not take any evidence other than that contained in the record of the hearing before the board.

(Italics ours.) Petitioners concede this procedure was chosen to take advantage of the automatic stay granted during appeal.

Respondents challenged petitioners' standing to appeal under RCW 36.93.160(5) asserting that none resided or owned property within the "area affected by the decision".

Respondents' motion for dismissal was granted. Our primary duty is to determine the legislature's intent when it employed the phrase "area affected by the decision". *Janovich v. Herron,* 91 Wn.2d 767, 771, 592 P.2d 1096 (1979); *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441,

445, 536 P.2d 157 (1975).

### The Holding

 The phrase "area affected" has not been defined by the legislature. It is used only in RCW 36.93.160(5), as noted above, and in RCW 36.93.160(1), regarding notice required for a Board's public hearing:

> Notice shall also be posted in ten public places *in the area affected* for five days when the area is ten acres or more. When the *area affected* is less than ten acres, five notices shall be posted in five public places for five days.

(Italics ours.) RCW 36.93.160(1) makes it clear the legislature intended the "area affected" to be of an ascertainable size; otherwise the distinction based upon precise acreage would be meaningless. Whenever possible, courts should avoid a statutory construction which nullifies, voids, or renders meaningless or superfluous any section or words. *Taylor v. Redmond,* 89 Wn.2d 315, 319, 571 P.2d 1388 (1977). The only area capable of precise acreage determination is that being considered for the proposed annexation.

Petitioners argue that notice posted only within the area to be annexed would often, as in this case, be no notice to parties who own or reside on real property outside the area to be annexed. However, this ignores the fact that notice must also be given through the local newspapers and to local governmental units. Such notice is adequate to apprise concerned citizens of the impending action even if posting is required only within the boundaries of the area of the proposed annexation.

Furthermore, if the statute is read as a whole, as required by *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977), it is evident the legislature intended to limit the right of appeal with its resultant "stay". RCW 36.93.100[1] clearly gives the initial right to request Board review of a proposed action to only three basic groups—(1)

---

[1]This section reads in full:

"36.93.100 Review of proposed actions by board—Procedure. The board shall review and approve, disapprove, or modify any of the actions set forth in RCW

members of the Board, (2) governmental units affected, as defined by RCW 36.93.160(1), and (3) residents and owners of property "within the area which is being considered for the proposed action . . ." It is only logical to conclude that the right to appeal the ultimate Board decision would be limited to those groups initially authorized to request Board review. The legislature having clearly given the petitioners no right to request the Board to accept review of the action in the first instance, we must conclude it gave them no right to appeal the decision.

Petitioners argue that if the legislature had intended that standing be limited to only those owning real property or residing within the area to be annexed, it could easily have said so. Petitioners' suggestion oversimplifies the problem, however. It must be understood that boundary review boards review many types of actions *in addition to* annexations. To accomplish the broad scope of review the legislature provided in RCW 36.93.160(1) that notice of hearing should be given to those governmental bodies "within the boundaries of the territory proposed to be annexed, formed, incorporated, disincorporated, dissolved or consolidated, or within the boundaries of a special district whose assets and facilities are proposed to be assumed by a city or town . . ." Thus, petitioners' suggestion oversimplifies the language. Furthermore, only two sentences

---

36.93.090 when any of the following shall occur within sixty days of the filing of a notice of intention:

"(1) The *chairman or any three members* of the boundary review board files a request for review;

"(2) *Any governmental unit affected* files a request for review;

"(3) A petition requesting review is filed and is signed by

"(a) five percent of the *registered voters residing within the area which is being considered for the proposed action* (as determined by the boundary review board in its discretion subject to immediate review by writ of certiorari to the superior court);

"(b) an *owner or owners* of property consisting of five percent of the assessed valuation *within such area.*

"If a period of sixty days shall elapse without the board's jurisdiction having been invoked as set forth in this section, the proposed action shall be deemed approved." (Italics ours.)

later in the same paragraph the legislature, again referring to statutory notice, used the phrase "area affected". Clearly, the phrase "area affected" refers back to and is modified by the preceding sentences within the same paragraph if RCW 36.93.160(1) is to mean anything. As so interpreted it is consistent with RCW 36.93.100(3)(a) which provides for those who may request Board review of actions as being registered voters residing "within the area which is being considered for the proposed action".

From the foregoing it is clear that when the legislature employed the phrase "area affected" it did not intend to establish a new or separate undefined area. Rather, it used the phrase to refer to an area previously defined, *i.e.*, the area being considered for the proposed action.

⬛ In asserting standing petitioners point to *Save a Valuable Environment v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978) (*SAVE*); and *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974). In *SAVE* standing was granted to challenge a city rezone and in *Leschi* standing was found to attack the findings and conclusions of the highway commission. Both cases were brought as writs of certiorari, however. That is not the case here. In the instant case petitioners deliberately avoided judicial review by means of a writ choosing instead to proceed by means of appeal under the statute in order to obtain an automatic stay of the Board's decision. Having made that deliberate tactical choice, and given the substantive difference between the two methods of procedure in this case, they cannot now be heard to say that the statutory appeal should be considered a writ.

Petitioners also cite *Bellevue v. King County Boundary Review Bd.,* 90 Wn.2d 856, 586 P.2d 470 (1978), to support their assertion of standing. It is wholly inapposite. In that case the City of Bellevue had clear statutory standing to invoke the jurisdiction of the Board and to appeal its decision. It was a "governmental unit affected" because it was a "city within three miles of the exterior boundaries of such area . . ." RCW 36.93.160(1). Petitioners do not fall within

the framework of *Bellevue*.[2]

Nothing herein is to be construed to denigrate the holdings in *Leschi, SAVE* or *Bellevue*. The writ procedure is always available to contest governmental action in a proper case. We hold only that the statute under which petitioners elected to proceed did not give them standing.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., and DOLLIVER, HICKS, and DIMMICK, JJ., concur.

DORE, J. (dissenting)—The unfortunate result of today's decision is to deny citizens their right to contest proposed boundary changes in their community. I cannot approve this unjust and unfair result; therefore, I dissent.

RCW 36.93.160(5) provides for appeals from the decision of a county boundary review board. Such decision becomes final "unless within ten days from the date of said action a governmental unit affected by the decision or any person owning real property or residing in the *area affected* by the decision files in the superior court a notice of appeal." (Italics mine.)

Because the term "area affected" is not defined in the statute, these words are to be given their ordinary and plain meanings. *King County Council v. Public Disclosure Comm'n*, 93 Wn.2d 559, 611 P.2d 1227 (1980). The Environmental Impact Statement which was prepared by DuPont found that certain areas beyond those sought to be annexed will be adversely affected by the proposed log export facility. Petitioners here reside or own land within these extraterritorial areas. It would strain the English language and common sense to say that petitioners are not in areas to be "affected" by the annexation.

This court gave a broad reading of the words "affected

---

[2]It is interesting to note that *Bellevue v. King County Boundary Review Bd.*, 90 Wn.2d 856, 586 P.2d 470 (1978) is inapposite for another significant reason. In the instant case an EIS was provided by DuPont, the lead agency. In *Bellevue* one of the issues was a failure to provide an EIS pursuant to the SEPA "overlay".

community" in *Save a Valuable Environment v. Bothell,* 89 Wn.2d 862, 869, 576 P.2d 401 (1978):

Bothell may not act in disregard of the effects outside its boundaries. Where the potential exists that a zoning action will cause a serious environmental effect outside jurisdictional borders, the zoning body must serve the welfare of the entire affected community. If it does not do so it acts in an arbitrary and capricious manner. The precise boundaries of the affected community cannot be determined until the potential environmental effects are understood. It includes all areas where a serious impact on the environment would be caused by the proposed action.

I would extend that policy to the subject case and find that the "area affected" will not be limited to the area to be annexed but rather will be determined upon a showing of direct and serious impact upon interested parties.

Our State Environmental Policy Act of 1971 (SEPA) acts as an overlay on existing statutory provisions, including boundary changes. *Bellevue v. King County Boundary Review Bd.,* 90 Wn.2d 856, 586 P.2d 470 (1978). SEPA expresses our state's policy that "each person has a fundamental and inalienable right to a healthful environment", RCW 43.21C.020(3), and the state policies are to be administered and interpreted "to the fullest extent possible", RCW 43.21C.030. This lends further support for a liberal reading of the term "area affected".

Furthermore, in *Bellevue v. King County Boundary Review Bd., supra,* the City of Bellevue was granted standing to contest an annexation approved by the City of Redmond. Bellevue's standing was grounded on the same statute as that in question here, RCW 36.93.160(5) specifically as "a governmental unit affected by the decision". The City of Bellevue, however was not within the area to be annexed but was in a position similar to petitioners before us today. Although there is some statutory authority for allowing a governmental unit to appeal even if the unit is not within the area to be annexed, *see* RCW 36.93.160(1), there is no reason to refuse that same interpretation when

the appellants are nongovernmental units.

What makes the majority's decision particularly harsh is the potential for abuse in the future. Weyerhaeuser Company owns 3,200 acres of the approximately 3,300 acres comprising the City of DuPont. DuPont approved the annexation which had been petitioned for by the only two landowners of the property to be annexed—Weyerhaeuser and Burlington Northern, Inc. The majority has today held that only landowners of the property to be annexed can appeal such approval. RCW 36.93, providing for court intervention, can be circumvented by a citizen who has the wealth to buy all the property it wishes to be annexed, and then by petitioning for such annexation, effectively insulate its acts from scrutiny by judicial review.

To hold that the "area affected" can only be the area to be annexed is to authorize unfettered disregard of the community by a single citizen who purchases all the property sought for annexation. I would allow those neighbors who are actually affected by the annexation to have their day in court.

ROSELLINI, UTTER, and WILLIAMS, JJ., concur with DORE, J.