53 P.3d 1041 (2002)
113 Wash.App. 450
Donald A. and Susan E. WRIGHT, Washington residents, Respondents,
v.
B & L PROPERTIES, INC., a Washington Partnership;[1] and Robert Brokaw, Lisa Lundt, husband and wife and their marital community, Appellants.
No. 49386-8-I.
Court of Appeals of Washington, Division 1.
September 16, 2002.
*1042 Gregory G. Jones, Kimberly Schulze, David Schoeggl, Mills, Meyers, Swartling, Seattle, WA, for Appellants.
Molly Kenny, The Johnson Law Group, Seattle, WA, for Respondents.
*1043 APPELWICK, J.
Purchasers of a residential home sued their general contractor for damages. The purchasers' attempts to serve the contractor personally were unsuccessful. They therefore served him by mail under the substitute service statute, RCW 4.28.080(16). The contractor failed to respond. The superior court entered a default judgment, ordering the contractor to pay $150,000 to the purchasers. The contractor urges this court to vacate that judgment.
The purchasers used reasonable diligence to serve the summons and complaint on the general contractor personally. They were, however, unsuccessful. They then left a copy with an appropriate person at the contractor's private mailbox address and mailed a copy to that address. By doing so, they satisfied the requirements of the substitute service statute, RCW 4.28.080(16). Service on the contractor was proper. Accordingly, we affirm.

FACTS
In May 1998, Robert Brokaw, a general contractor,[2] sold a newly-constructed residential home to Susan and Donald Wright. The home was located on a hill overlooking the Puget Sound. One month later, the Wrights noticed a water leak. They reported it to Brokaw, who patched a small hole in the foundation. The water leak continued, causing mold and mushrooms to grow inside the home. The Wrights also noticed that dirt next to the home was sliding down the hill.
Beginning in the late summer of 1998, the Wrights left several telephone messages for Brokaw. But Brokaw did not return those calls.
Engineers conducted an investigation and concluded that the home's drainage system was severely inadequate. They recommended that the Wrights immediately install an appropriate drainage system and build retaining walls. If they did not, the engineers warned that the house would slide down the hill. The Wrights made the recommended repairs, incurring more than $150,000 in expenses.
In December 1998, the Wrights filed a complaint against Brokaw in Snohomish County Superior Court. That complaint sought damages for breach of contract, negligent misrepresentation, and breach of warranty of habitability.
The Wrights hired a registered process server to personally serve the summons and complaint on Brokaw at the only address they had for him: 2030 Dexter Avenue North, B252, Seattle, Washington 98109. That address appeared on Brokaw's letterhead stationery and faxes. It also appeared on the closing documents for the home sale.
The process server arrived at that address and discovered that it was a private mailbox located at Aaron's Mini Storage. Aaron's offered not only storage, but also mailing services.[3] When Brokaw contracted for his private mailbox at Aaron's, he signed a United States Postal Service document designating Aaron's as his agent for delivery of mail. But Brokaw's agreement with Aaron's prohibited Aaron's from accepting certified or registered mail.
The Wrights attempted to locate another address for Brokaw. They called the local phone company's directory assistance. They also made inquiries at offices of the Secretary of State and the Department of Labor and Industries. The process server searched social security, voters' registration, traffic records, and criminal records. Despite these efforts, the only address the Wrights could find for Brokaw was his Dexter Avenue private mailbox.
Indeed, Brokaw used his Dexter Avenue address on personal bank accounts, income tax returns, and telephone bills. He also used it on invoices relating to his business. In 1997, he sent a "we've moved" note announcing *1044 the Dexter Avenue private mailbox address as his new address. At that time, Brokaw lived aboard his yacht, which was moored in Seattle. He explained that he was unable to have mail delivered to his yacht.
On December 18 and 23, 1998, a process server left copies of the Wrights' summons and complaint with the manager of Aaron's at Brokaw's Dexter Avenue address. On December 28, 1998, the Wrights mailed via first class mail, postage prepaid, a copy of the summons and complaint to that address. The mail was not returned. Brokaw, however, failed to respond to the complaint.
On March 5, 1999, a superior court commissioner entered a default judgment against Brokaw. And on June 15, 1999, the commissioner entered a $151,970.68 judgment against him.
On August 17, 2001, Brokaw filed a motion to vacate that judgment. He claimed that service of process was improper. According to Brokaw, he left Seattle in October 1998 and did not return until 2000. During that time, he was on his yacht in the Caribbean. After Brokaw left Seattle, he still claimed that his principal place of business was in King County, Washington. While he was in the Caribbean, he continued to pay for moorage in Seattle. Brokaw did not submit a change of address form to the United States post office. Instead, he kept his address at Aaron's Mini Storage and arranged to have Aaron's forward his mail to a yacht chartering agent. That agent then forwarded Brokaw's mail to him. Brokaw nonetheless alleged that he did not receive actual notice of the Wrights' lawsuit before the default judgment was entered.
The superior court commissioner determined that service was proper and denied Brokaw's motion to vacate the judgment. The superior court judge denied Brokaw's motions to revise and reconsider. Brokaw appeals.

ANALYSIS
Brokaw contends that the default judgment against him must be vacated because he was not properly served.
"On review of an order denying a motion to vacate, only `the propriety of the denial not the impropriety of the underlying judgment' is before the reviewing court." State v. Gaut, 111 Wash.App. 875, 881, 46 P.3d 832 (2002) (quoting Bjurstrom v. Campbell, 27 Wash.App. 449, 450-51, 618 P.2d 533 (1980)). "We will not overturn a trial court's decision on a motion to vacate a judgment under CR 60(b) unless it plainly appears that the trial court abused its discretion." Scanlon v. Witrak, 110 Wash.App. 682, 686, 42 P.3d 447 (2002).
Beyond constitutional due process requirements, statutory service requirements must be complied with in order for a court to finally adjudicate dispute between parties. Weiss v. Glemp, 127 Wash.2d 726, 734, 903 P.2d 455 (1995). The relevant service of process statute provides:
Service made in the modes provided in this section shall be taken and held to be personal service. The summons shall be served by delivering a copy thereof, as follows:
. . . .
(15) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein.
(16) In lieu of service under subsection (15) of this section, where the person cannot with reasonable diligence be served as described, the summons may be served as provided in this subsection, and shall be deemed complete on the tenth day after the required mailing: By leaving a copy at his or her usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof, and by thereafter mailing a copy by first class mail, postage prepaid, to the person to be served at his or her usual mailing address. For the purposes of this subsection, "usual mailing address" shall not include a United States postal service post office box or the person's place of employment.
RCW 4.28.080.
I. Statutory Requirements
Brokaw contends that service on his private mailbox was not authorized by statute. *1045 At issue in this case is substitute service as authorized by RCW 4.28.080(16).
First, Brokaw argues that service on Aaron's was not proper because he did not live there and because the manager at Aaron's was apparently not authorized to accept service of process on his behalf. These arguments confuse the requirements of the substitute service subsection of the statute, RCW 4.28.080(16), with the requirements set forth in the previous subsection, RCW 4.28.080(15). The previous subsection presents an alternative way to obtain personal service by leaving a copy of the summons at the defendant's "usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(15). The Wrights have never claimed that Brokaw's private mailbox was his usual abode. Thus, the requirements set forth in RCW 4.28.080(15) do not apply to this case. Accordingly, whether Brokaw lived at the address used under the substitute service statute and whether the manager at Aaron's was a resident authorized to accept service of process are of no consequence to this case.[4]
Second, Brokaw contends that the Wrights' efforts to serve him personally were insufficient to satisfy RCW 4.28.080(16)'s reasonable diligence prerequisite.[5] Brokaw suggests that the Wrights should have contacted his friends and family, who apparently knew his email address and website. Reply Br. at 7. During oral argument before this court, he suggested that the Wrights should have also contacted his attorney of record in an unrelated case, who was evidently in regular contact with Brokaw.
Reasonable diligence requires the plaintiff to make honest and reasonable efforts to locate the defendant. Crystal, China and Gold, Ltd. v. Factoria Ctr. Invests., Inc., 93 Wash.App. 606, 611, 969 P.2d 1093 (1999) (interpreting reasonable diligence under the corporation substitute service statute, RCW 23B.05.040(2)(b)). But reasonable diligence does not require the plaintiff to employ all conceivable means to locate the defendant. Crystal, China and Gold, Ltd., 93 Wash.App. at 611, 969 P.2d 1093; see also Martin v. Meier, 111 Wash.2d 471, 482, 760 P.2d 925 (1988) (describing same test for "due diligence" in the nonresident motorist statute, RCW 46.64.040).
In Crystal, China and Gold, Ltd., 93 Wash.App. at 611, 969 P.2d 1093, we found that reasonable diligence was satisfied for purposes of the corporation substitute service statute, RCW 23B.05.040. RCW 23B.05.040(2)(b) (authorizing service on the Secretary of State when the corporation's "registered agent cannot with reasonable diligence be found at the registered office"). The plaintiff in that case hired a registered process server to attempt personal service on the agent of a corporation. Crystal, China and Gold, Ltd., 93 Wash.App. at 608, 969 P.2d 1093. After learning that the agent would be out of the office until after the statute of limitations expired, the plaintiff attempted to locate the agent's home address. Crystal, China and Gold, Ltd., 93 Wash.App. at 608, 969 P.2d 1093. The plaintiff checked the local telephone directory and called directory assistance. Crystal, China and Gold, Ltd., 93 Wash.App. at 608, 969 P.2d 1093. Unable to find an alternate address, the plaintiff served the summons and complaint on the Secretary of State as authorized by RCW 23B.05.040. Crystal, China and Gold, Ltd., 93 Wash.App. at 608, 969 P.2d 1093.
In the present case, the Wrights made even more efforts to locate an alternate address for Brokaw. In addition to calling the local phone company's directory assistance, they made inquiries at offices of the *1046 Secretary of State and the Department of Labor and Industries, and searched social security, voters' registration, traffic records, and criminal records. The Wrights' efforts to locate the defendant were honest and reasonable. The additional means proposed by Brokawi.e., contacting his friends, family, and his attorneywere not required to satisfy reasonable diligence. Moreover, even if the Wrights could have somehow located those people, it is not reasonable to presume that people close to Brokaw would have necessarily divulged his updated contact information. The effort to locate need not be exhaustive. We conclude that the Wrights' efforts satisfied RCW 4.28.080(16)'s "reasonable diligence" requirement in this case.
Third, Brokaw contends that substitute service at 2030 Dexter Avenue North, B252, Seattle, Washington 98109 was improper because that address was not his "usual mailing address" for the purposes of RCW 4.28.080(16). Brokaw claims that after October 1999 he was in the Caribbean. But after October 1999, Brokaw continued to use his 2030 Dexter Avenue North, B252 address. He even made special arrangements to have his mail forwarded to him from that address. While he was in the Caribbean, he claimed that his principal place of business was in King County, Washington and continued to pay for moorage in Seattle. The record reflects that the only Seattle address he used was his 2030 Dexter Avenue North, B252 address. We therefore conclude that 2030 Dexter Avenue North, B252 was Brokaw's usual mailing address at the time the Wrights' lawsuit was filed.
Finally, Brokaw urges this court to hold that his private mailbox was not his "usual mailing address" for the purposes of the substitute service statute because it was a private mailbox at an office center. RCW 4.28.080(16). That statute expressly excludes "a United States postal service post office box" from the definition of "usual mailing address[.]" RCW 4.28.080(16).
When statutory language is clear and unequivocal, courts must assume "the Legislature meant exactly what it said and apply the statute as written." Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997). "[W]henever possible, courts should avoid a statutory construction which nullifies, voids, or renders meaningless or superfluous any section or words[.]" State ex rel. Gallwey v. Grimm, 146 Wash.2d 445, 48 P.3d 274, 283 (2002) (citing Nisqually Delta Ass'n v. City of DuPont, 95 Wash.2d 563, 568, 627 P.2d 956 (1981)).
It is undisputed that 2030 Dexter Avenue North, B252 was not a United States postal service post office box. Brokaw nonetheless urges this court to hold that a private mailbox is also excluded from RCW 4.28.080(16)'s definition of usual mailing address.
In a case involving a similar statute in California, a federal court stated:
By the clear and unequivocal language of the California statute, the California legislature has mandated that service at a person's usual mailing address other than a United States Postal Service post office box is effective. Had the legislature intended that service be effective only at mailing addresses other than any post office box, it would have omitted the descriptive language "United States Postal Service" preceding "post office box." Clearly, the legislature felt it necessary to clarify which types of post office boxes which were excluded from the rule. By implication, service is proper on private post office boxes.

Burrows v. City of League City, Texas, 985 F.Supp. 704, 706 (S.D.Tex.1997) (analyzing Cal.Civ.Proc.Code § 415.20(b) (West 1997)) (footnote omitted). The reasoning presented in this persuasive authority applies equally to the present case.
Brokaw attempts to distinguish the facts of Burrows. He points out that, unlike the manager of Aaron's, the "agent of the private post office service" in that case was authorized to receive certified mail. See Burrows, 985 F.Supp. at 706. But this is a distinction without a difference. As discussed above, whether the manager at Aaron's was authorized by Brokaw to accept service of process is of no consequence. The substitute service statute authorized Aaron's to accept service of process. See RCW 4.28.080(16) (explaining that service is completed *1047 "[b]y leaving a copy [of the summons] at [the defendant's] usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof").
Without citation to authority, Brokaw asserts that there is no difference between a United States postal service post office box and a private mailbox. He opines that the intent of the United States postal service post office box exclusion must have been "to avoid service on a post office box, which may be checked infrequently (or even never) by its owner." For this reason, he argues that substitute service should similarly be excluded. We disagree.
The Legislative history indicates that the Senate heard testimony on this issue. That testimony, which was presented in support of the bill, is summarized in the Senate Bill Report as follows:
[T]he bill addresses the situation in which people use "mail drop" addresses as their legal residence. This legislation would not permit persons to avoid service of process through the use of such a device.
S.B. Rep. No. 5167, at 2 (as passed, Jan. 1996). The Legislative history indicates that no testimony was presented against the bill. S.B. Rep. No. 5167, at 2.; H.B. Rep. No. 5167, at 2 (amended, Feb. 1996).
The United States postal service post office box exclusion is not specifically mentioned in the Legislative history. We surmise that the exception was most likely a result of federal pre-emption of Washington's ability to require United States postal service employees to accept a copy of summons and complaint on behalf of a post office box addressee. See RCW 4.28.080(16) (requiring, inter alia, that a copy of the summons be left at the usual mailing address "with a person of suitable age and discretion who is a resident, proprietor, or agent thereof").
Brokaw asks us to interpret RCW 4.28.080(16) in a manner that renders the words "United States postal service post office" meaningless and superfluous. RCW 4.28.080(16). We decline to do so. Instead, we must apply the unequivocal language of the statute as written. We hold that the special exception set forth by our Legislature for a United States postal service post office box does not include private mailboxes. RCW 4.28.080(16).
II. Constitutional Rights
Brokaw contends that his constitutional due process rights were violated because he did not receive actual notice of the lawsuit before the default judgment was entered. "A constitutionally proper method of effecting substitute service need not guarantee that in all cases the defendant will in fact receive actual notice; what is essential is that the method of attempted service be reasonably calculated to provide notice to the defendant." Woodruff v. Spence, 88 Wash. App. 565, 570-71, 945 P.2d 745 (1997).
The constitutionality of substitute service lacking actual notice is long settled. In 1939, a federal court addressed the constitutionality of Washington's statute authorizing substitute service on nonresident motorists after due diligence is used to locate the defendant. Boss v. Irvine, 28 F.Supp. 983, 984 (W.D. Wash 1939); see RCW 46.64.040. That court concluded that "[s]tatutes of this character conform to constitutional norms." Boss, 28 F.Supp. at 984. And in 1950, the United States Supreme Court held that service by publicationwhich it described as "an indirect and even a probably futile means of notification"is not unconstitutional. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
RCW 4.28.080(16) requires that a plaintiff use "reasonable diligence" to serve a defendant before substitute service is permitted. Thereafter, the plaintiff must leave a copy of the summons with an appropriate person at the defendant's usual mailing address. The plaintiff must also mail a copy of the summons to that same address. Only then is service proper under this subsection. The numerous requirements set forth in RCW 4.28.080(16) demonstrate that this method is reasonably calculated to provide notice. Brokaw's failure to receive actual notice of the lawsuit against him in this case does not establish a violation of his constitutional rights.

*1048 CONCLUSION

In the summer of 1998, Brokaw was aware that water was leaking into a home he had just sold to the Wrights. After making one effort to fix the problem, he left the country and did not return calls from them. Brokaw used a private mailbox address in Seattle for his personal and business mail. While he was out of the country, he continued to use his private mailbox address. He even arranged to have mail sent to that address forwarded to him while he was away.
The Wrights used reasonable diligence to serve the summons and complaint on Brokaw personally. They were, however, unsuccessful. They then left a copy with an appropriate person at his private mailbox address and mailed a copy to that address. By doing so, they satisfied the requirements of the substitute service statute, RCW 4.28.080(16). We conclude that Brokaw was properly served with the Wrights' summons and complaint.
Accordingly, we affirm the superior court's denial of Brokaw's motion to vacate the default judgment.
GROSSE and COLEMAN, JJ., concur.
NOTES
[1] B & L Properties is a sole proprietorship, not a corporation or a partnership.
[2] Robert Brokaw and his wife, Lisa Lundt, operated a general contractor business as a sole proprietorship using the name B & L Properties. We refer to Brokaw, Lundt, and B & L Properties collectively as Brokaw.
[3] Services offered by Aaron's included private mail boxes, packing, shipping, mail forwarding, faxing, photocopying, dumpster service, and storage units.
[4] Brokaw does not dispute that the manager at Aaron's Mini Storage was "a person of suitable age and discretion who is a resident, proprietor, or agent thereof" as required by RCW 4.28.080(16). Indeed, Brokaw designated Aaron's as his agent for delivery of mail.
[5] Brokaw did not raise the issue in his Opening Brief to this court. Instead, he raised the issue for the first time in his Reply Brief. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Nonetheless, because the Wrights addressed the issue in their Respondents' Brief to this court, we will address it here.