[No. 49709-5. En Banc. January 26, 1984.]

THE CITY OF RICHLAND, *Appellant,* v. FRANKLIN COUNTY BOUNDARY REVIEW BOARD, ET AL, *Respondents.*

*Evans & Kerr,* by *Leland B. Kerr,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* for respondent Boundary Review Board.

*Owens, Weaver, Davies & Mackie* and *Alexander W. Mackie,* for respondent City of Pasco.

UTTER, J.—The City of Richland appeals from a decision of the Franklin County Boundary Review Board (Board) approving the City of Pasco's application to annex 4,500 acres of unincorporated territory. Richland contends that the Board's decision should be reversed because it erred in accepting into evidence an Environmental Impact Statement (EIS) that was inadequate as a matter of law, it failed to combine the Richland and Pasco annexation hearings and it decided to approve the Pasco proposal without finding that it satisfied the relevant statutory criteria. It further argues that the trial court erred in dismissing its request for declaratory and injunctive relief because the automatic stay provision of RCW 36.93.160 operates throughout all appeals of the action. Pasco maintains that Richland's appeal should be dismissed for failure to join all necessary parties. We find the uncontroverted evidence supports the Board's decision, that Richland's remaining claims lack merit, and therefore affirm.

On August 11, 1980, Pasco applied to the Board for annexation of approximately 4,500 acres of southwest Franklin County. Pasco lies to the southeast of this property which extends from Pasco's northernmost boundary 5 miles until it reaches the Columbia River. Richland views this property from directly across the Columbia River. On August 28, 1980, it applied to the Board for approval of a Richland annexation which would extend its boundaries across the river and include a portion of the proposed Pasco annexation. Richland's proposal had recently become feasible due to the Washington State Department of Transportation's decision to construct a bridge which would extend Interstate 182 across the Columbia River. Once the bridge was completed, Richland would be only a short distance from its proposed annexation site.

A large amount of commercial and residential development was anticipated for the area along I-182. Both Frank-

lin County and Pasco had adopted comprehensive plans for the area in anticipation of accelerated growth. Pasco had also adopted a preannexation zoning map for the area which allowed for commercial uses of various densities and had prepared an EIS in support of its proposed annexation and zoning changes.

Pasco's application was scheduled for hearing in January 1981. Richland's request that its application be heard jointly with that of Pasco's was denied. Its hearing date was deferred until after the Pasco hearing. At the Pasco annexation hearing Richland was allowed to offer evidence concerning the comparative services it could offer the overlapping area. On February 26, 1981, the Board issued a decision approving Pasco's annexation.

Richland appealed the Board's decision to the Superior Court pursuant to RCW 36.93.160. The court affirmed the Board's decision. Richland then filed the instant appeal with the Court of Appeals. Soon thereafter, Pasco began proceedings to annex the property. Richland then filed a separate action seeking declaratory and injunctive relief to stay Pasco's annexation pending final resolution of the appeal. The trial court dismissed Richland's complaint and Richland appealed. Both cases were consolidated by the Court of Appeals which ordered them certified to this court.

I

Richland claims that the EIS offered by Pasco in support of its annexation proposal failed to address the socioeconomic consequences of a large, regional shopping center to be located at the junction of I–182 and Road 100 in Franklin County. *Bellevue v. King Cy. Boundary Review Bd.*, 90 Wn.2d 856, 586 P.2d 470 (1978). Pasco concedes that it has zoned this area for a shopping center, but argues that such zoning does not commit it to approve a shopping center and that no shopping center has been proposed. Richland has offered no evidence to establish that a shopping center was proposed at any time prior to the Board's decision.

In *Cheney v. Mountlake Terrace*, 87 Wn.2d 338, 552

P.2d 184 (1976), we considered whether the possible future development of a site was an environmental consequence which the City was required by RCW 43.21C (SEPA) to consider at the time it approved a highway project. We noted that "[t]he mandate of SEPA does not require that every remote and speculative consequence of an action be included in the EIS", *Cheney,* at 344, and concluded that environmental considerations would best be served by waiting until a specific proposal had been made. Such is the case here.

## II

■ The Board denied Richland's request for a joint hearing with Pasco because it erroneously believed that RCW 35A.14.230 foreclosed it from entertaining a second application until after it had fully considered the first. RCW 35A.14.230 is part of a larger statutory scheme which sets forth procedures for municipal annexation. *See* RCW 35A.14.110 *et seq.* Under the direct petition method of this scheme, a city must first file with the Board an "intention to annex" signed by those persons owning at least 10 percent of the assessed value of the proposed annexation area. RCW 35A.14.120. Thereafter, a "petition to annex" signed by those persons owning 75 percent of the assessed value of the annexation area is filed. RCW 35A.14.130. Once the 75 percent petition is filed, RCW 35A.14.230 prevents consideration of any petition subsequently filed if it concerns all or part of the same property. Because Pasco admittedly came to the Board without a 75 percent petition and requested a hearing on the basis of its "notice of intention to annex" alone, the provisions of RCW 35A.14.230 did not apply. The Board could have heard Richland and Pasco's applications jointly.

Richland, however, does not argue that joint hearings are required by statute. It argues that the purpose for which the annexation statutes and procedures have been promulgated would have been better served by a joint hearing in this case.

One of the purposes of this statutory scheme is the resolution of claims to unincorporated territory between competing municipalities. RCW 36.93.010; *Orchard Grove Water Ass'n v. King Cy. Boundary Review Bd.*, 24 Wn. App. 116, 600 P.2d 616 (1979). Pursuant to this purpose, the Legislature has enacted RCW 36.93.160 which accords special rights of notice and appeal to cities neighboring the proposed annexation. A joint hearing between competing municipalities might generally serve to better facilitate this purpose. However, the legislative scheme has proven sufficient, in this case, to protect Richland's interest.

At the Pasco hearing, Richland was allowed both to present the merits of its own proposal and to demonstrate the inadequacy of Pasco's plans. It declined to comment on Pasco's proposal, but rather gave a lengthy presentation on the merits of its own application. Several Richland city officials presented testimonial evidence and entered exhibits. Richland was accorded approximately the same amount of time at the hearing as was Pasco and its proposal was given equal consideration by the Board. The evidence supporting Pasco's proposal was uncontroverted. Under these circumstances, Richland was not prejudiced by the Board's denial of its request for a joint hearing. *Mentor v. Kitsap Cy.*, 22 Wn. App. 285, 588 P.2d 1226 (1978).

### III

Many residents within Pasco's proposed annexation area did not want to become included and preferred annexation to Richland. Pasco recognized that these residents would defeat the 75 percent petition it needed to successfully annex. At the opening of its annexation hearing, Pasco expressed this concern and offered a revised description of the annexation area which excluded the complaining residents. No one objected specifically to the boundary revisions although a solid group of residents both inside and adjoining the annexation area were against Pasco's annexation proposal in general. The Board approved Pasco's proposal as modified at the hearing.

 Richland contends that Pasco's last minute "modification" was politically motivated and inconsistent with the requirements of RCW 36.93.170. We have held that the intent behind the gerrymandering of boundaries is irrelevant when considering an annexation proposal. The Board's sole concern should be "the objective result, to be measured against the goals set out in RCW 36.93.180." *Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.*, 97 Wn.2d 922, 928, 652 P.2d 1356 (1982). Under this analysis, only the annexation as a whole is considered. The appropriateness of its boundary delineation is merely one of several factors for the Board to consider in determining whether to approve the proposal.

RCW 36.93.180 sets forth a list of objectives the Board must attempt to achieve in deciding whether to annex certain property.

Those the Board found applicable here are:

(1) Preservation of natural neighborhoods and communities;

(2) Use of physical boundaries, including but not limited to bodies of water, highways, and land contours;

(3) Creation and preservation of logical service areas;

(4) Prevention of abnormally irregular boundaries;

(5) Discouragement of multiple incorporations of small cities and encouragement of incorporation of cities in excess of ten thousand population and heavily populated urban areas; . . .

(7) Adjustment of impractical boundaries;

(8) Incorporation as cities or towns or annexation to cities or towns of unincorporated areas which are urban in character; and

(9) Protection of agricultural lands.

We have held that these objectives are more than aspirational. At least one must be achieved for the Board's decision to be affirmed. *Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd., supra* at 926.

In its findings and resolution, the Board specifically set forth its findings under RCW 36.93.170. These included the present population and territory, its needs for the future,

the ability of municipalities to supply these needs and the effect of the proposal on the immediate area. The Board did not state how it believed it had satisfied the objectives of RCW 36.93.180, but rather listed the statute's relevant objectives and then stated: "After taking into consideration all of the objectives set out above, evaluating all other testimony and exhibits, the board found that it would be to the best interest of the adjacent areas of the governmental units involved and the contiguous and adjacent areas to allow the proposed area to be annexed to the City of Pasco." Clerk's Papers, at 65.

Although the Board did not specifically outline its reasons for finding the statutory criteria satisfied, an independent review of the record revealed substantial evidence to support the Board's conclusion. The Pasco annexation achieved the statutory objectives of creating and preserving logical service areas and using physical boundaries. It also prevented abnormally irregular boundaries.

It was anticipated that the entire area would grow rapidly once the I–182 interchange was built. Pasco had drawn up plans to service the entire annexation area for the next several decades and had demonstrated its capability to carry out the plan. Its plans were more ambitious and long term than were Richland's. In addition, Pasco's annexation would use the Columbia River as a boundary. Richland's plans were to annex a smaller area immediately across the Columbia River and to provide it with services by extending sewer and water lines across the river. Richland's proposal would extend its boundaries across the Columbia and into Franklin County. Richland argued that the land remaining between its newly created boundaries across the Columbia and Pasco could be annexed and serviced by Pasco.

From this, it is evident that Pasco was the most logical municipality to provide the entire annexation area with the needed services and to provide the soundest growth pattern for the area.

Because we have found Richland's claims to be without

merit, we need not consider Pasco's contention that Richland failed to join all necessary parties in appealing the Board's decision.

## IV

■ Richland contends that the automatic stay provision of RCW 36.93.160 operates throughout all appeals of this action. Because the Board's decision to grant Pasco's application to annex was legally sound, the question whether Pasco was foreclosed from carrying out the annexation until every appeal had been adjudicated is moot.

> A moot case will be reviewed if its issue is a matter of continuing and substantial interest, it presents a question of a public nature which is likely to recur, and it is desirable to provide an authoritative determination for the future guidance of public officials.

*Cathcart–Maltby–Clearview Comm'ty Coun. v. Snohomish Cy.*, 96 Wn.2d 201, 208, 634 P.2d 853 (1981).

This case illustrates problems peculiar to appeals from annexation orders which will recur whenever an annexation order is challenged in the courts of appeal. For these reasons it is desirable to address the scope of the statutory stay set forth in RCW 36.93.160(5).

RCW 36.93.160 provides, in pertinent part:

> (5) . . . Decisions shall be final and conclusive unless within ten days from the date of said action a governmental unit affected by the decision or any person owning real property or residing in the area affected by the decision files in the superior court a notice of appeal.
>
> The filing of *such notice of appeal* within such time limit shall stay the effective date of the decision of the board until such time as *the appeal* shall have been adjudicated or withdrawn. . . .
>
> (6) The superior court may affirm the decision of the board or remand the case for further proceedings; or it may reverse the decision . . . An aggrieved party may secure a review of any final judgment of the superior court by appeal to the supreme court or the court of appeals. *Such appeal* shall be taken in the manner provided by law for appeals from the superior court in other civil cases.

(Italics ours.)

The clear language of the statute indicates that the Legislature intended the statutory stay to operate only through adjudication by the superior court. In the first quoted paragraph, the statute refers to appeals to the superior court. In the immediately succeeding sentence, the statute provides for a stay to last throughout "the appeal." The statute then delineates the powers possessed by the *superior court.*

Only after the rules for appeal to the superior court have been set forth does the statute discuss the method by which further appeals shall be taken. These further appeals are not subject to a statutory stay, but "shall be taken in the manner provided by law for appeals from the superior court in other civil cases."

Our conclusion that the stay is so limited is further supported by the statutory purpose of RCW 36.93 which is to resolve those disputes between municipalities which create haphazard municipal growth and services. An interpretation which would permit an automatic stay pending resolution of all appeals would serve only to contravene this objective by prolonging those "problems [which] affect adversely the quality and quantity and cost of municipal services furnished, the financial integrity of certain municipalities . . . and many other incidents of local government." RCW 36.93.010.

In addition, the Rules of Appellate Procedure govern appeals from the superior court. RCW 36.93.160 makes no exception to this general rule but, rather, mandates that appeals from decisions of the superior court be taken in the prescribed manner. RAP 8.3 gives the appellate court the authority, except when prohibited by statute, "to issue orders, before or after acceptance of review, to insure effective and equitable review, *including authority to grant injunctive or other relief to a party. . . .* A party seeking the relief provided by this rule should use the motion procedure provided in Title 17." (Italics ours.)

A party seeking appellate review of a superior court's

affirmance or reversal of a boundary review board's decision must seek injunctive relief under RAP 8.3 in order to enjoin enforcement of the board's decision.

The judgment is affirmed.

WILLIAMS, C.J., ROSELLINI, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and McMULLEN, JJ. Pro Tem., concur.