[No. 3562–0–III.   Division Three.   October 21, 1980.]

SPOKANE COUNTY FIRE PROTECTION DISTRICT NO. 8, *Plaintiff,* GLENROSE PRESERVATION & DEVELOPMENT ASSOCIATION, *Appellant,* v. SPOKANE COUNTY BOUNDARY REVIEW BOARD, *Respondent.*

*Patrick Downey,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *David A. Saraceno, Deputy,* for respondent.

McINTURFF, J.—The Glenrose Preservation and Development Association (Glenrose Association), a voluntary nonprofit corporation, and its members, appeal from a Superior Court decision affirming the Spokane County Boundary Review Board's (Board) annexation of certain territory to the City of Spokane.

The area in question, encompassing approximately 25 acres of vacant agricultural land known as the Glenrose Park Addition, is located southeast of the city of Spokane. Discussion on the proposed annexation took place at a public hearing held by the Board on March 28, 1978. The Glenrose Association, comprised of some residents in the Glenrose area, is opposed to the proposed annexation. Well known to all parties were plans by developer James S. Black to construct a residential subdivision consisting of 57 homes and 4 duplexes on this property. Mr. Black filed a petition for annexation to the City and has received approval of the Spokane County Plan Commission to develop the tract. Based upon testimony, arguments and exhibits, the Board approved the annexation proposal and filed a formal resolution and hearing decision on May 10, 1978.

Initially, the Glenrose Association contends the court erred in entering findings of fact and conclusions of law when no evidence was taken and review was limited to the administrative record.

■ In *King County Water Dist. 54 v. King County Boundary Review Bd.*, 87 Wn.2d 536, 543, 554 P.2d 1060 (1976), the court reviewed a decision by the King County Boundary Review Board and held findings of fact and conclusions of law are not "required" when a trial court reviews an administrative record and does not take evidence. However, a court does review challenged agency action to determine compliance with legal precedent and is not precluded from entering findings of fact and conclusions of law, as long as the trial court utilized proper standards of review to resolve the legal challenge. *See Sisley v. San Juan County*, 89 Wn.2d 78, 82, 569 P.2d 712 (1977). The trial court's findings of fact reiterate the Board's findings and the court's conclusions of law reflect its resolution of legal contentions asserted. In this context, we find no error. The findings of fact and conclusions of law were not "required" and therefore are unnecessary. Our review is of the entire Board record, not the findings of the Superior Court.

Next, the Glenrose Association contends the Board failed to review and evaluate the City of Spokane's planning department declaration of environmental nonsignificance[1] and then make an independent determination of environmental impact.

■ County boundary review boards are created by statute. *See* RCW 36.93.030. Their purpose is to review and approve, disapprove, or modify limited actions set forth in

---

[1]The Environmental Assessment reads:

"An environmental assessment of this annexation was made by the planning department. Based upon this assessment and information gathered in our review, the commission determined the proposed annexation would not have a significant adverse impact upon the environment, and an environmental impact statement is not required.

"The annexation of a parcel of land to an incorporated city is a legislative process and as such will not have a major impact on the environment. It is recognized that an environmental impact statement may be necessary when the area is platted or other major development is proposed. The general nature of the present development ideas is only for the purpose of evaluating the annexation."

RCW 36.93.090.[2] Their function is not to make land use decisions but to resolve competition among municipalities for unincorporated territory. *Orchard Grove Water Ass'n v. King County Boundary Review Bd.,* 24 Wn. App. 116, 118, 600 P.2d 616 (1979); *see* RCW 36.93.010; RCW 36.93.180. In addition to "guiding and controlling the creation and growth of municipalities" under RCW 36.93.010, board decisions must reflect consideration of the State Environmental Policy Act of 1971 (RCW 43.21C) guidelines. RCW 43.21C.060 states:

> The policies and goals set forth in this chapter are supplementary to those set forth in existing authorizations of all branches of government of this state, including state agencies, municipal and public corporations, and counties . . .

*See also Sisley v. San Juan County, supra* at 82; *Stempel v. Department of Water Resources,* 82 Wn.2d 109, 118, 508 P.2d 166 (1973). In *Bellevue v. King County Boundary Review Bd.,* 90 Wn.2d 856, 865, 586 P.2d 470 (1978), the court stated:

> an environmental assessment *in addition* to consideration of factors set out in RCW 36.93.170–.180 is made mandatory upon the board by the enactment of SEPA.

In *Bellevue* the court also noted at page 867:

> The burden is upon the governmental body subject to SEPA to show that it made a threshold determination which "demonstrate[s] that environmental factors were considered in a manner sufficient to be a prima facie

---

[2]Under RCW 36.93.090 the board may review any such proposed actions pertaining to:

"(1) The creation, dissolution, incorporation, disincorporation, consolidation, or change in the boundary of any city, town, or special purpose district . . .

"(2) The assumption by any city or town of all or part of the assets, facilities, or indebtedness of a special purpose district which lies partially within such city or town; or

"(3) The establishment of or change in the boundaries of a mutual water and sewer system or separate sewer system by a water district . . .

"(4) The extension of permanent water or sewer service . . ."

compliance with the procedural dictates of SEPA." *Lassila v. Wenatchee,* 89 Wn.2d 804, 814, 576 P.2d 54 (1978).

The Glenrose Association relies upon *Bellevue* for the proposition that the Board erred in refusing to make an independent assessment of the environmental effects of the proposed annexation. But *Bellevue* is distinguishable. There, no environmental assessment was prepared for presentation to the King County Board and under the 1973 regulations in effect at the time of the action, "each agency passing upon a proposal, including this board, was responsible for evaluating and supplementing environmental decisions and reports." *Bellevue, supra* at 866. Unlike the instant case, the King County Board acted without benefit of any formal environmental assessment. In *Bellevue* the court noted (1) counsel for the board advised that neither an environmental impact statement nor an environmental assessment of any kind was necessary and (2) the record was devoid of any serious consideration of environmental factors.

Washington Administrative Code provisions not in effect during the *Bellevue* cause of action, but effective here, indicate the only agency required to prepare a formal environmental assessment was the City of Spokane Plan Commission *as lead agency.* WAC 197–10–200 states:

> The lead agency shall be the only agency responsible for complying with the threshold determination procedures of WAC 197–10–300 through 197–10–390; . . .

Additionally, WAC 197–10–390 states:

> [A] threshold determination by the lead agency is binding upon all agencies. No agency shall repeat the threshold determination procedures for substantially the same proposal.

In addition to the factors set forth in RCW 36.93.170–.180[3] case law imposes upon the Board the duty to consider the assessment and all other environmental factors involved in

---

[3]RCW 36.93.170:

the annexation before approving it. *Bellevue, supra* at 868. We are satisfied that in addition to the declaration of non-significance submitted to the Board by the lead agency, substantial testimony relating to environmental concerns

"In reaching a decision on a proposal or an alternative, the board shall consider the factors affecting such proposal, which shall include, but not be limited to the following:

"(1) Population and territory; population density; land area and land uses; comprehensive use plans and zoning; per capita assessed valuation; topography, natural boundaries and drainage basins, proximity to other populated areas; the existence of prime agricultural soils and agricultural uses; the likelihood of significant growth in the area and in adjacent incorporated and unincorporated areas during the next ten years; location and most desirable future location of community facilities.

"(2) Municipal services; need for municipal services; effect of ordinances, governmental codes, regulations and resolutions on existing uses; present cost and adequacy of governmental services and controls in area; prospects of governmental services from other sources; probable future needs for such services and controls; probable effect of proposal or alternative on cost and adequacy of services and controls in area and adjacent area; the effect on the finances, debt structure, and contractual obligations and rights of all affected governmental units.

"(3) The effect of the proposal or alternative on adjacent areas, on mutual economic and social interests, and on the local governmental structure of the county."

RCW 36.93.180:

"The decisions of the boundary review board shall attempt to achieve the following objectives:

"(1) Preservation of natural neighborhoods and communities;

"(2) Use of physical boundaries, including but not limited to bodies of water, highways, and land contours;

"(3) Creation and preservation of logical service areas;

"(4) Prevention of abnormally irregular boundaries;

"(5) Discouragement of multiple incorporations of small cities and encouragement of incorporation of cities in excess of ten thousand population in heavily populated urban areas;

"(6) Dissolution of inactive special purpose districts;

"(7) Adjustment of impractical boundaries;

"(8) Incorporation as cities or towns or annexation to cities or towns of unincorporated areas which are urban in character; and

"(9) Protection of agricultural lands.

"(10) Provide reasonable assurance that the extension of municipal services and the additional payments to be made by the property owners of the area to be annexed in the form of taxes bear a reasonable relation to the value of the additional municipal services to be received. This objective shall apply only to cities with a population of 400,000 or more which initiates a resolution for annexation proceedings."

and relating to factors specified under RCW 36.93.170–.180 was considered and evaluated prior to the Board's decision. The Board considered testimony and exhibits relating to, among other things, independent environmental concerns, population growth, proximity to other populated areas, soil conditions, drainage, water supply, air pollution, sewage problems, and topography.[4] We find no error.

Lastly, the Glenrose Association contends the Board failed to "attempt to achieve" the objectives listed by RCW 36.93.180.[5] We disagree. In its resolution and hearing decision the Board was cognizant of those specified objectives and stated:

> The area to be annexed is currently undeveloped, however, contiguous areas are populated and this area is natural for the overflow of the Lincoln Heights residential area. . . . In the judgment of the Board, the subject area is part of a natural community of the City of Spokane and the Board decision tends to accomplish the objective of RCW 36.93.180(1).
>
> . . .
>
> . . . All relevant city departments were contacted in regard to this annexation, and all departments indicated that this annexation is within their logical service area. The decision of the Board tends to accomplish the objectives of RCW 36.93.180(3).
>
> The Boundary Review Board recognizes that the current eastern boundary follows Havana Street and provides a straight boundary on the eastern city limit. This configuration could be maintained only if the Boundary Review Board were to exclusively annex land parcels which ran the full length of the current boundary, thereby maintaining a straight north–south boundary. To expect development in this manner would not be reasonable, practical, or beneficial. Annexation areas simply do

[4]In its resolution and hearing decision the Board indicated it considered reports regarding population density, water service, educational service, municipal services, police and fire protection, refuse disposal, traffic control, parks and recreation, utilities, sewage and air pollution. All reporting departments indicated services could be provided adequately with no substantial cost increase or savings resulting from annexation.

[5]See footnote 2.

not manifest themselves in such a manner. Moreover, RCW 36.93.180(4) requires this Board to "attempt to achieve . . . [the] prevention of *abnormally* irregular boundaries." While the boundary of this annexation does not establish a straight city boundary line, it is not abnormally irregular, but reflects an attempt to achieve a proper annexation boundary utilizing RCW 36.93.180[1] [2] [3] [and 4] . . .

The determination reached by the Board, supported by the record, demonstrates attention to the factors in RCW 36.93.170–.180 and consideration of the environmental assessment. Although agency action may be reversed when the reviewing court is firmly convinced that a mistake has been committed, we are not convinced an error was made. Courts will not substitute their own judgment for that of an administrative agency acting within the sphere of its expertise. *Hayes v. Yount,* 87 Wn.2d 280, 286, 552 P.2d 1038 (1976).

Judgment of the Superior Court is affirmed.

GREEN, C.J., and ROE, J., concur.