[No. 48137–7.  En Banc.  November 4, 1982.]

SPOKANE COUNTY FIRE PROTECTION DISTRICT NO. 9, *Appellant,* v. SPOKANE COUNTY BOUNDARY REVIEW BOARD, *Respondent.*

*Dellwo, Rudolf & Schroeder, P.S.,* and *Richard J. Schroeder,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *David Saraceno, Deputy,* for respondent.

UTTER, J.—Appellant, Spokane County Fire Protection District No. 9, challenges a decision of the Spokane County Boundary Review Board (Board) approving an annexation proposed by the City of Spokane (City). Appellant first claims that the Board's decision was in excess of its authority and was not supported by substantial evidence. Second, appellant seeks to challenge the Board's decision as failing to comply with the State Environmental Policy Act of 1971 (SEPA) (RCW 43.21C.010 *et seq.*). We reject appellant's claims and affirm the Board's decision.

On June 11, 1979, several county residents petitioned the City to annex an area in which they owned property and

which borders the current city limits. Before deciding whether to attempt to do so, the City evaluated the potential environmental impact and issued a negative threshold determination. Appellant did not appeal that threshold determination, despite the fact that City regulations provide that any public official "with jurisdiction" may appeal a threshold determination to the city manager. Administrative Rules and Procedures Implementing the Environmental Policy Ordinance for the City of Spokane 400.85.

After its initial evaluation, the City filed a Notice of Intention To Annex with the Board. The Board held public hearings on January 15, 1980, and March 31, 1980, at which numerous citizens commented on the environmental and other effects which annexation would have. The Board rendered its decision on April 13, 1980, approving the proposed annexation. Appellant and a citizens' group opposing the annexation appealed to the superior court. That court rejected their challenge and appellant sought review in this court.

## I

Initially, appellant contends that the Board exceeded its authority by making a land use decision. It bases this contention on the fact that the proposed annexation will necessarily change permissible land use. At this time, the area to be annexed is only sparsely populated and is zoned agricultural by Spokane County, though actual agricultural use is moderate. The City has no zoning classification comparable to the present county zoning, but proposes to zone the area R1S–L. This classification increases permissible residential density somewhat and restricts agricultural activities to a degree. *Compare* Comprehensive Zoning Ordinance of the City of Spokane 125.20 *with* Spokane County Code, ch. 4.04.

■ It is true that it is not the function of a boundary review board to make land use decisions. *See Spokane Cy. Fire Protec. Dist. 8 v. Spokane Cy. Boundary Review Bd.,* 27 Wn. App. 491, 494, 618 P.2d 1326 (1980); *Orchard Grove Water Ass'n v. King Cy. Boundary Review Bd.,* 24 Wn.

App. 116, 118, 600 P.2d 616 (1979). The Board's decision in the instant case, however, was not a land use decision as such but approval of an extension of the City's boundaries. Such decisions are at the center of the Board's authority. *See* RCW 36.93.090(1); RCW 36.93.100. The mere fact that the Board's decision has an incidental effect on land use does not put the decision outside its authority. To hold otherwise would prevent the Board from reviewing any annexation where the annexing authority did not have a zoning classification identical to that applicable prior to annexation.

## II

Appellant also contends that the evidence does not support the Board's decision. RCW 36.93.160(6)(e) requires reversal of a boundary review board decision if it is "[u]nsupported by material and substantial evidence in view of the entire record as submitted". The administrative procedure act (APA) (RCW 34.04.010 *et seq.*), on the other hand, provides for reversal of any state agency decision which is "clearly erroneous". RCW 34.04.130(6)(e). Which standard is applicable is of some importance since the "substantial evidence" standard is significantly narrower in scope than the "clearly erroneous" standard. *Ancheta v. Daly,* 77 Wn.2d 255, 259, 461 P.2d 531 (1969).

We hold that the substantial evidence standard applies here. Our previous cases indicate that whether the general APA standard controls a standard of more circumscribed applicability turns on which was last enacted. *Compare Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 322-23, 646 P.2d 113 (1982) *with Olson v. UW,* 89 Wn.2d 558, 562, 573 P.2d 1308 (1978). Despite the fact that RCW 36.93.160 was officially enacted into law prior to the APA standard (*see* Laws of 1967, ch. 189, § 16 (enacting RCW 36.93.160); Laws of 1967, ch. 237, § 6 (enacting APA standard)), *Sellers,* wherein we held the APA standard controlled earlier enacted standards, is not controlling here. In *Sellers,* we simply applied the usual rule that a general statute prevails over a previously enacted special statute

where such appears to have been the legislative intent. *See Wark v. Washington Nat'l Guard,* 87 Wn.2d 864, 867, 557 P.2d 844 (1976). We cannot find such an intent, however, where, as here, the statutes were enacted by the *same session* of the Legislature—in such circumstances, the special statute must control. *See, e.g., State v. Walls,* 81 Wn.2d 618, 622–23, 503 P.2d 1068 (1972); *State ex rel. Or. R.R. & Nav. Co. v. Clausen,* 63 Wash. 535, 540, 116 P. 7 (1911). This is especially true in this instance, where one house of the Legislature actually passed the general provision first. *See* Senate Journal, 40th Legislature (1967), at 661 (passage of APA standard on February 27, 1967); Senate Journal, 40th Legislature (1967), at 932–33 (passage of boundary review board statute on March 6, 1967).

█ RCW 36.93.180 sets out a list of objectives which the Board is to "attempt to achieve" by its decisions. Those pertinent in the present case are:

(1) Preservation of natural neighborhoods and communities;
(2) Use of physical boundaries, including but not limited to bodies of water, highways, and land contours;
(3) Creation and preservation of logical service areas;
(4) Prevention of abnormally irregular boundaries;
. . .
(7) Adjustment of impractical boundaries;
(8) Incorporation as cities or towns or annexation to cities or towns of unincorporated areas which are urban in character; and
(9) Protection of agricultural lands.

While, on its face, RCW 36.93.180 requires only that the Board "attempt to achieve" these objectives, they do provide a framework for evaluating the Board's decision. In addition, we construe the statutory objectives as more than merely aspirational—while a boundary review board need not achieve all or even most of them, a decision which advances none at all is reversible.

In the present case, there is substantial evidence to support the Board's claim that its decision advances at least some of the statutory objectives. While conflicting evidence

was presented, there was substantial evidence to support a conclusion that the proposed annexation would create logical service areas and practical boundaries. There was also significant, though not total, reliance upon physical boundaries. The inside of the "L"–shaped annexation area was contiguous to the city limits. Of the remainder of the area's boundary, half to two–thirds relied upon existing roads and a bluff above the Spokane River, while the remainder was based largely on property lines. Hence, half to two–thirds of the noncontiguous boundary was based on physical features.[1]

The Board also concluded that area to be annexed would soon become urban in character; however, we attach little weight to this finding. The urban character focused upon by RCW 36.93.180(8) above is *present* urban character. Future urbanization is of little relevance, for incorporation is unnecessary until urbanization has taken place or is at least an immediate prospect.

Substantial evidence does not exist to support a conclusion that the remaining objectives of RCW 36.93.180 are advanced by the Board's decision. There is, however, substantial evidence to indicate that most of them are not *set back* by the decision. Though there was testimony indicating that part of the area to be annexed was good farmland, other testimony indicated it was of marginal agricultural value. The boundaries of the proposed annexation, while somewhat irregular, are not abnormally so. The annexation will, by including only half of a geographically distinct plateau, harm a natural neighborhood.[2] We cannot say, how-

---

[1] "Physical" is defined as "relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary". *Webster's Third New International Dictionary* 1706 (1976). Legal boundaries are therefore not "physical."

[2] The term "natural neighborhoods" is not defined by RCW 36.93.180. It could be construed to mean either distinct geographical areas or socially and locationally distinct groups of residents. In the absence of legislative direction, we construe the term to encompass both meanings. This is in accord with the general rule that remedial statutes are to be liberally construed. *See, e.g., State v. Douty*, 92 Wn.2d 930, 936, 603 P.2d 373 (1979).

ever, that this harm is significant enough to offset the other advantages the Board concluded were present.

In addition to attacking the evidentiary support for the conclusions just discussed, appellant has also made much of the apparent gerrymandering of the annexation boundaries to assure sufficient signatures for approval.[3] The Board, however, is not responsible for the intent underlying the delineation of the area to be annexed. Its sole concern is the objective result, to be measured against the goals set out in RCW 36.93.180. *Cf. Meyers v. Local Agency Formation Comm'n,* 34 Cal. App. 3d 955, 960–61, 110 Cal. Rptr. 422 (1973) (gerrymandering not relevant to decision by LAFCO, the California equivalent to boundary review boards). The gerrymandering in the instant case therefore is of no independent significance.

In sum, we cannot say that substantial evidence supporting the Board's decision does not exist. It was the Board's responsibility to consider the evidence presented by all parties in light of the statutory objectives. This it did, and with our limited powers of review we cannot countermand its decision here.

### III

Finally, appellant contends that, even if the Board's decision is not reversible as unsupported by the evidence, reversal is required because SEPA was not complied with. Specifically, it claims that the City's negative threshold determination was erroneous.

We need not address this issue because appellant failed to exhaust administrative remedies. In general, an agency action cannot be challenged on review until all rights of administrative appeal have been exhausted. *Wright v. Woodard,* 83 Wn.2d 378, 381, 518 P.2d 718 (1974). In the present case, the City's regulations gave

---

[3]RCW 35.13.125 *et seq.* provide that annexation may be accomplished by petition rather than election; however, the petition must be signed by the owners of at least 75 percent of the assessed valuation for general taxation purposes in the area to be annexed (RCW 35.13.130).

appellant a right to appeal to the city manager. This right appellant did not exercise. There is no evidence in the record that it had no notice of the City's threshold determination nor that it had no opportunity to exercise its right to appeal. *Cf. Gardner v. Pierce Cy. Bd. of Comm'rs,* 27 Wn. App. 241, 243–44, 617 P.2d 743 (1980) (lack of such notice or opportunity excuses failure to exhaust remedy). Appellant is therefore barred from challenging the validity of the City's negative threshold determination.

The decision of the Board is affirmed.

BRACHTENBACH, C.J., STAFFORD, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.