[Nos. 25618–1–I; 25715–3–I. Division One. May 20, 1991.]

SNOHOMISH COUNTY, ET AL, *Appellants,* v. RAY HINDS, *Respondent.*

*Seth R. Dawson, Prosecuting Attorney,* and *Carol J. Weibel, Deputy,* for appellants Snohomish County, et al.

*Scott Missall,* for appellant Mill Creek. .

*Lorna S. Corrigan* and *Newton, Knight, Adams & Castleberry,* for respondent.

FORREST, J.—Snohomish County, Snohomish County Boundary Review Board (Board), and the City of Mill Creek appeal from a superior court's reversal of a decision by the Board denying a proposed annexation to the City of Everett, arguing that there was substantial evidence in the record to support the Board's decision, and that the Superior Court applied an improper standard of review. We reverse.

The City of Everett proposed annexing 152 acres in an inverted T formation pointing south from Everett. The proposed annexation included the highway corridor of SR 527 running north–south, with 132nd Street S.E. running east–west through the bottom of the T. The area includes vacant land with commercial development potential and generally excludes residential areas.

In the fall of 1988 the Board held two public hearings, in which there were 9 hours of testimony, and considered 482 pages of evidence. On September 29, 1988, the Board denied the proposed annexation by a vote of 4 to 1, finding that the proposal failed to achieve five of the nine objectives of boundary review boards set out in RCW 36.93.180.

On October 7, 1988, Ray Hinds, owner of property within the annexation, filed a notice of appeal. He moved for summary judgment on the adequacy of the Board's findings. On June 15, 1989, the Superior Court found the findings insufficient as a matter of law, and ordered "that this matter be remanded to the Board for entry of adequate Findings of Fact in support of its Conclusions and Decision."

The Board appointed one of its members on July 19, 1989, to draft adequate findings of fact. On August 8, 1989, the Board adopted supplemental findings. Hinds then appealed to the Superior Court, which reversed the Board in a memorandum decision, entering an order on January

31, 1990, directing the Board to issue an order approving the annexation. This appeal followed.

### JURISDICTION AND PARTIES

Mill Creek and Snohomish County both assert that the Superior Court exceeded its jurisdiction in reversing the Board decision because there was no finding that the decision prejudiced Hinds. Hinds argues that this cannot be urged for the first time on appeal because it was not raised to the trial court. Both parties' arguments are erroneous.

Hinds' argument is mistaken because the appellants' contention that Hinds was not prejudiced need not have been made to the court below. Once a superior court has rendered its decision on an administrative appeal, the Court of Appeals reviews that decision "by applying the proper standard of review directly to the record at the administrative proceedings." *Franz v. Department of Empl. Sec.*, 43 Wn. App. 753, 756, 719 P.2d 597, *review denied*, 106 Wn.2d 1013 (1986). Accordingly, the issue of whether Hinds has made the requisite showing to justify a reversal of the Board's decision is properly before us and will be addressed in connection with our independent review of the record.

Jurisdiction to hear appeals from a boundary review board decision is conferred upon the superior court by RCW 36.93.160(5), which states in part:

> Decisions shall be final and conclusive unless within ten days from the date of said action a governmental unit affected by the decision or any person owning real property or residing in the area affected by the decision files in the superior court a notice of appeal.

Hinds is a "person owning real property or residing in the area" and is thus expressly granted standing to invoke the jurisdiction of the superior court. Both Mill Creek and the County confuse the right to be granted relief with the right to seek relief in superior court. RCW 36.93.160(6) reads in part:

> The superior court may affirm the decision of the board or remand the case for further proceedings; or it may reverse the

decision if any substantial rights may have been prejudiced . . ..

Mill Creek and the County correctly point out that to reverse the Board, the superior court must find that "substantial rights may have been prejudiced."[1] But without such a showing of prejudice, the court does not lose jurisdiction. Rather, like a plaintiff who fails to prove damage, the party appealing would merely have failed to establish a requirement for relief. We therefore rule that the Superior Court had jurisdiction over the case.

Finally, Hinds asserts that neither the Board nor the City of Mill Creek are proper parties to this appeal. We disagree. Mill Creek was a proper party to the Board hearing. RCW 36.93.160(1) requires that a boundary review board give 30 days' advance notice of the time and place of the hearing "to the governing body of each city within three miles of the exterior boundaries of such area".[2] Mill Creek is within 3 miles of Everett. Furthermore, the City of Mill Creek presented testimony and introduced evidence in opposition to the proposed annexation, specifically objecting to the extension of the Everett City limits south of 132nd street. The fact that Mill Creek did not actively participate in the argument at the superior court hearing on the appeal is immaterial. As a party, Mill Creek is bound by that decision. An aggrieved party may secure review of any final judgment of the superior court by appeal to the Court of Appeals or the Supreme Court. RCW 36.93.160(6). Mill Creek is aggrieved because the Superior Court's ruling

---

[1]The statute specifically limits this requirement to a decision to reverse. Thus Hinds could be entitled to a remand without making such showing.

[2]The court in *Nisqually Delta Ass'n v. DuPont*, 95 Wn.2d 563, 570, 627 P.2d 956 (1981) noted that in *Bellevue v. King Cy. Boundary Review Bd.*, 90 Wn.2d 856, 586 P.2d 470 (1978) the City of Bellevue "had clear statutory standing to invoke the jurisdiction of the Board and to appeal its decision. It was a 'governmental unit affected' because it was a 'city within three miles of the exterior boundaries of such area.. . ." RCW 36.93.160(1)." The dissent in *Nisqually,* at 572 (Dore, J., dissenting), put it less positively: "there is some statutory authority for allowing a governmental unit to appeal even if the unit is not within the area to be annexed . . .."

awards territory to the City of Everett that is within Mill Creek's long–term annexation plan. Mill Creek is a proper party to this appeal.

Similarly, in the present case the Board was a named party in the appeal to the superior court and would, of course, be bound by the court's decision. Although no case has directly held that a boundary review board is a proper party in an appeal, the practice has been to include boundary review boards as parties.[3] Indeed, in *Bellevue v. King Cy. Boundary Review Bd.*[4] individual commissioners of a boundary review board were treated as parties, at least for purposes of discovery.

As a practical matter, the presence of the Board as a party in this case makes no difference because Mill Creek and the County both actively supported the Board's decision in this court and the court below. However, this might not have been the case. Because of the peculiar nature of annexation proceedings, it would be possible to have a boundary review board decision appealed with no opposing party if boards lacked standing. Such a circumstance would deprive an appellate court of an adversarial presentation of arguments, as well as be manifestly unfair to a boundary review board that could not defend its decision, a decision which is prima facie in the public interest. Accordingly, we hold that the Board is a proper party to this appeal. It is

---

[3]*Richland v. Franklin Cy. Boundary Review Bd.,* 100 Wn.2d 864, 676 P.2d 425 (1984); *Barrie v. Kitsap Cy. Boundary Review Bd.,* 97 Wn.2d 232, 643 P.2d 433 (1982); *Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.,* 97 Wn.2d 922, 652 P.2d 1356 (1982); *Bellevue v. King Cy. Boundary Review Bd.,* 90 Wn.2d 856, 586 P.2d 470 (1978); *King Cy. Water Dist. 54 v. King Cy. Boundary Review Bd.,* 87 Wn.2d 536, 554 P.2d 1060 (1976); *Hanson v. Spokane Cy.,* 53 Wn. App. 723, 770 P.2d 210, *review denied,* 113 Wn.2d 1004 (1989); *King Cy. Boundary Review Bd. v. Auburn,* 45 Wn. App. 363, 725 P.2d 451 (1986); *Wenatchee v. Boundary Review Bd.,* 39 Wn. App. 249, 693 P.2d 135 (1984); *Spokane Cy. Fire Protec. Dist. 8 v. Spokane Cy. Boundary Review Bd.,* 27 Wn. App. 491, 618 P.2d 1326 (1980); *Orchard Grove Water Ass'n v. King Cy. Boundary Review Bd.,* 24 Wn. App. 116, 600 P.2d 616 (1979).

[4]90 Wn.2d 856, 865, 586 P.2d 470 (1978).

unnecessary to decide under what circumstances, if any, the Board would be an indispensable party.

## STANDARD OF REVIEW

■ Hinds contends that the Board decision is "[u]nsupported by material and substantial evidence in view of the entire record as submitted". RCW 36.93.160(6)(e).[5] This is a substantial evidence standard that is distinct from the former APA "clearly erroneous" standard.[6] The substantial evidence standard is significantly narrower in scope,[7] which in this context means that greater deference is accorded the Board's decision.[8] It is essentially the same long–standing

---

[5]RCW 36.93.160(6) provides in full:

"The superior court may affirm the decision of the board or remand the case for further proceedings; or it may reverse the decision if any substantial rights may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(a) In violation of constitutional provisions, or

"(b) In excess of the statutory authority or jurisdiction of the board, or

"(c) Made upon unlawful procedure, or

"(d) Affected by other error of law, or

"(e) Unsupported by material and substantial evidence in view of the entire record as submitted, or

"(f) Arbitrary or capricious.

"An aggrieved party may seek appellate review of any final judgment of the superior court in the manner provided by law as in other civil cases."

[6]*Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.,* 97 Wn.2d 922, 925, 652 P.2d 1356 (1982).

The APA standard of review was amended as of July 1, 1989, from "clearly erroneous" to "not supported by evidence that is substantial when viewed in light of the whole record before the court . . .". RCW 34.05.570(3)(e). This is the functional equivalent of the standard that we apply under the boundary review board statute. RCW 36.93.160(6)(e). Before "clearly erroneous", the standard of review was a substantial evidence standard identical to RCW 36.93.160(6)(e). Thus the APA standard has come full circle.

[7]*Ancheta v. Daly,* 77 Wn.2d 255, 259, 461 P.2d 531 (1969). Significantly, the *Ancheta* court was comparing the previous "substantial evidence" version of the APA with the revised version which for the first time used the term "clearly erroneous". Even applying the clearly erroneous test, the *Ancheta* court noted the deference accorded an administrative agency:

But just as we do not substitute our judgment for that of the trial court, we do not expect that the superior court will substitute its judgment for that of the administrative body. Just as we give deference to the trial court's observation

test that appellate courts apply to trial courts' findings of fact.

## EXAMINATION OF THE RECORD

■ Applying the substantial evidence test to the record we find no evidence that any *substantive* rights of Hinds "may have been prejudiced" by the Board's findings. RCW 36.93.160(6). Hinds impliedly concedes this by arguing that his *procedural* due process rights were infringed by the Board's improper consideration of land use issues. As explained below, we find that claim to be without merit. Accordingly, Hinds has failed to demonstrate that he is entitled to a reversal of the Board's decision. Although this alone could be dispositive, our examination of the record demonstrates that there is indeed substantial evidence to support the Board's decision to deny annexation.

■ In its decision, the lower court concluded that the Board's ruling was unsupported by any substantial evidence, yet the court clearly failed to apply the appropriate substantial evidence standard of review. Rather, the court appeared to weigh the evidence as shown in this comment: "thus the weight of the evidence supports a finding that the proposal would actually reunify a portion of the Silver Lake Community."

Further, the court failed to identify or analyze specific findings of fact to determine whether they were supported by substantial evidence. For example, the trial court's statement that "there [is no] evidence that Mill Creek wishes to extend its boundaries north to 132nd street" ignores the August 25, 1988, letter submitted on behalf of Mill Creek which stated that the annexation would "penetrate the geographic area defined as the City of Mill Creek's

---

of the demeanor and testimony of witnesses, we expect that the superior court will give deference to the expertise of the administrative tribunal.
*Ancheta,* at 260.

[8]*Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983).

future northern urban growth boundary." This is but one example in which the trial court essentially substituted its judgment for that of the Board. Although the evidence was conflicting on a number of issues, our own review of the record discloses that there was substantial evidence to support the Board's findings.

RCW 36.93.180[9] sets out nine objectives which the Board is to "attempt to achieve" by its decision. In applying these objectives to evaluate a boundary review board decision, the court in *Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.*, 97 Wn.2d 922, 926, 652 P.2d 1356 (1982) stated that "we construe the statutory objectives as more than merely aspirational—while a boundary review board need not achieve all or even most of them, a decision which advances none at all is reversible." In the present case, the following objectives were material to the Board's decision: (1) preservation of natural neighborhoods and communities; (2) use of physical boundaries including but not limited to bodies of water, highways and land contours; (3) creation and preservation of logical service areas; and (4) prevention of abnormally irregular boundaries. We conclude that there is substantial evidence

---

[9]RCW 36.93.180 states in part:

"The decisions of the boundary review board shall attempt to achieve the following objectives:

"(1) Preservation of natural neighborhoods and communities;

"(2) Use of physical boundaries, including but not limited to bodies of water, highways, and land contours;

"(3) Creation and preservation of logical service areas;

"(4) Prevention of abnormally irregular boundaries;

"(5) Discouragement of multiple incorporations of small cities and encouragement of incorporation of cities in excess of ten thousand population in heavily populated urban areas;

"(6) Dissolution of inactive special purpose districts;

"(7) Adjustment of impractical boundaries;

"(8) Incorporation as cities or towns or annexation to cities or towns of unincorporated areas which are urban in character; and

"(9) Protection of agricultural and rural lands which are designated for long term productive agricultural and resource use by a comprehensive plan adopted by the county legislative authority."

to support the Board's judgment that denial of annexation "will significantly achieve the Objectives of RCW 36.93-.180" that are relevant to the annexation.

First, the Board determined that "natural neighborhoods and communities" (RCW 36.93.180) would not be preserved by the annexation. The Supreme Court has held that this phrase may refer to socially identifiable or "locationally distinct groups of residents." *Spokane Cy. Fire Protec. Dist. 9,* at 927 n.2. In the present case, many factual findings support the Board's conclusion regarding natural neighborhoods: the majority of residents identified their community interests with Snohomish County rather than with Everett; 700 persons identified as the greater Silver Lake community opposed the proposal; and a preponderance of citizens opposing the annexation reside just outside its boundary.

The Board's second conclusion was that the proposed annexation fails to use physical boundaries because the annexation south of 132nd Street follows lot lines rather than roads or physical features. It is clear from inspecting the map that the proposed boundary south of 132nd Street is determined by lot lines. As legal boundaries, lot lines are excluded from the definition of "physical boundaries". RCW 36.93.180(2). The proposed boundary also splits a drainage basin.

The Board's third conclusion was that the annexation does not preserve a logical service area. Many residents testified that they were satisfied with existing services. The Board found that "a preponderance of the evidence indicates that municipal services (fire, police, water, other) are adequately provided in the annexation area," and concluded that the annexation might create "possible confusion in jurisdiction for fire and police response."

And finally, the Board concluded that the flagpole shape of the annexation is abnormally irregular. Indeed, far from

preventing "abnormally irregular boundaries",[10] this annexation would create one. While there may be some reasonable argument that other annexations of other cities are also irregular, the Board offered the following:

> [t]he annexation area includes only a 1,450 foot boundary with the city and then extends south approximately three quarters of a mile and almost exclusively avoids residential development, while including property along a highway corridor (SR–527) with commercial development potential . . ..

The Board's findings noted that the shared portion of boundary between Everett and the annexation represented only about 12 percent of the total perimeter of the annexation. Substantial evidence supports the Board's findings.

CONSIDERATION OF LAND USE ISSUES

Hinds' principal contention is that the Board acted outside its authority by basing its decision on land use issues. The trial court agreed, stating that "the true basis of their decision related to matters beyond the scope of their concern." Without direct citation, the court apparently determined that the decision was "[i]n excess of the statutory authority or jurisdiction of the board". RCW 36.93.160-(6)(b). We disagree.

■ Many of the factors the Board is directed to consider by RCW 36.93.170 relate to land use decisions.[11] The

---

[10]RCW 36.93.180(4).

[11]RCW 36.93.170 provides:

"**Factors to be considered by board—Incorporation proceedings exempt from state environmental policy act.** In reaching a decision on a proposal or an alternative, the board shall consider the factors affecting such proposal, which shall include, but not be limited to the following:

"(1) Population and territory; population density; land area and land uses; comprehensive plans and zoning, as adopted under chapter 35.63, 35A.63, or 36.70 RCW; per capita assessed valuation; topography, natural boundaries and drainage basins, proximity to other populated areas; the existence and preservation of prime agricultural soils and productive agricultural uses; the likelihood of significant growth in the area and in adjacent incorporated and unincorporated areas during the next ten years; location and most desirable future location of community facilities;

"(2) Municipal services; need for municipal services; effect of ordinances, governmental codes, regulations and resolutions on existing uses; present cost and

Board is specifically directed by RCW 36.93.170(1) to consider "land area and land uses; comprehensive plans and zoning". Far from prohibiting consideration of land use issues, the statute mandates such consideration. Additionally, the statutory objectives to be achieved by a boundary review board necessarily include other land use considerations.[12] While we agree that "[t]he function of the boundary review board is to resolve competition among municipalities for unincorporated territory and not to make land use decisions", we find that here the Board acted within its authority. *Orchard Grove Water Ass'n v. King Cy. Boundary Review Bd.,* 24 Wn. App. 116, 118, 600 P.2d 616 (1979). Indeed, as the original applicant for annexation, the City of Everett introduced substantial evidence to show that it was not going to change the existing land use.

A board's decision is not invalid even if annexation takes into consideration or impacts land use. In *Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.,*[13] the proposed annexation necessarily involved a change in land use because the City had no zoning classification comparable to the County's zoning, and the City's proposed zoning would increase the permissible residential density and restrict agricultural activities. In spite of this direct effect, the court stated:

> The mere fact that the Board's decision has an incidental effect on land use does not put the decision outside its authority. To hold otherwise would prevent the Board from reviewing any

adequacy of governmental services and controls in area; prospects of governmental services from other sources; probable future needs for such services and controls; probable effect of proposal or alternative on cost and adequacy of services and controls in area and adjacent area; the effect on the finances, debt structure, and contractual obligations and rights of all affected governmental units; and

"(3) The effect of the proposal or alternative on adjacent areas, on mutual economic and social interests, and on the local governmental structure of the county."

[12]See footnote 9.

[13]97 Wn.2d 922, 652 P.2d 1356 (1982).

annexation where the annexing authority did not have a zoning classification identical to that applicable prior to annexation. *Spokane Cy. Fire Protec. Dist. 9,* at 925.

Land use issues are merely secondarily involved here as they were in *Spokane.*[14] In the present case one issue before the Board was Everett's desire to extend its boundaries south of 132nd Street and Mill Creek's desire to eventually expand its boundary up to 132nd Street. Indeed, this is just the type of issue the Board is designed to resolve.[15] In light of the statutory directive to boundary review boards to consider land use issues, we find that the Board's consideration of such issues was proper, and that its decision was not an improper effort to act as a zoning agency. Furthermore, isolated comments concerning land use by individual board members do not invalidate a board's factual findings so long as those findings are supported by substantial evidence, as they were here, just as isolated comments by a trial judge do not vitiate the findings of a trial court.

In light of the substantial evidence supporting the Board's conclusions that the annexation fails to meet the objectives of RCW 36.93.180, we reverse with instructions to dismiss Hinds' appeal and reinstate the Board's decision.

COLEMAN and BAKER, JJ., concur.

---

[14]It is interesting to note that in denying annexation the Board's decision would leave the existing land use as is. Without annexation the County can change the land use—with annexation the City could do so.

[15]*Orchard Grove.*