IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NEIGHBORS AGAINST ANNEXATION, | ) | |
| | ) | |
| Appellant, | ) | No. 76936-7-I |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| SNOHOMISH COUNTY BOUNDARY REVIEW BOARD, a Washington municipal corporation, | ) ) ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CITY OF SULTAN, a Washington municipal corporation, and TIM ALBERS, RUSTY DRIVSTUEN, MATT ANDERSON, and SKY RIDGE ESTATES II, | ) ) ) ) ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents, | ) | FILED· December 17, 2018 |
| | ) | |
| SNOHOMISH COUNTY, a Washington municipal corporation, | ) ) | |
| | ) | |
| Interested Party. | ) | |
| | ) | |

SMITH, J. — Neighbors Against Annexation (Neighbors) appeals the

decision of the Snohomish County Boundary Review Board (Board) to approve

the annexation of 80 acres of property into the city of Sultan (City) in Snohomish

County (County). Because substantial evidence supports the Board's decision

that annexation is consistent with the statutory factors set forth in RCW 36.93.170, the objectives set forth in RCW 36.93.180, and the relevant provisions of the Growth Management Act (GMA), chapter 36.70A RCW, described in RCW 36.93.157, we affirm.

## FACTS

Rusty Drivstuen, Tim Albers, Matt Anderson, and Sky Ridge Estates II (together, the Interested Parties) presented the City with a petition to annex approximately 80 acres of property into the City. Together, the Interested Parties own approximately 65 acres of the annexation area located north of the City within the City's urban growth area (UGA). At a May 2015 city council meeting, several citizens spoke out against the annexation.

In December 2015, the City submitted a notice of intention (NOI) to the Board proposing that approximately 80 acres be annexed. The City held public hearings regarding the annexation on January 28, February 11, and March 24, 2016. On March 24, 2016, the City passed a resolution approving the annexation.

In May 2016, a registered voter in the annexation area petitioned for review by the Board. On August 18, 2016, the Board held a public hearing, where it heard testimony from the City, the Interested Parties, counsel for Neighbors, and other registered voters within the annexation area. On August 25, 2016, the Board held open deliberations on the annexation proposal and unanimously voted to approve it.

2

Neighbors appealed the Board's decision to Snohomish County Superior Court. In May 2017, the trial court affirmed the Board's decision. Neighbors appeals.

## MOTION TO DISMISS APPEAL

As a preliminary matter, the Interested Parties argue that this appeal is effectively moot and should be dismissed under RAP 18.9(c) because their preliminary subdivision application was approved while this appeal was pending and the annexation was not stayed. They correctly assert that even if Neighbors is successful on appeal, their property rights could not be overturned because those rights are vested. See Town of Woodway v Snohomish County, 180 Wn.2d 165, 172-73, 322 P.3d 1219 (2014) (holding that the vested rights doctrine protects a developer's right to "'have a land development proposal processed under the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in zoning or other land use regulations'") (quoting Abbey Rd. Grp., LLC v City of Bonney Lake, 167 Wn.2d 242, 250, 218 P.3d 180 (2009)). But because other property within the annexation area was not subject to the subdivision application and because we affirm the Board's decision, we choose to address the merits of the appeal. Accordingly, we deny the motion to dismiss.

## STANDARD OF REVIEW

In deciding whether to approve, modify, or reject a proposed annexation, the Board must consider the statutory factors and objectives set forth in RCW

36.93.170 and RCW 36.93.180, as well as whether the proposal is consistent with the GMA under RCW 36 93.157.

"The Legislature has set out specific terms for judicial review of the decisions of the Board." King County v. Wash State Boundary Review Bd for King County, 122 Wn.2d 648, 671, 860 P.2d 1024 (1993). RCW 36.93.160(6)(e) governs review of a decision of the Board and states that the superior court may reverse the Board's decision if it is "[u]nsupported by material and substantial evidence in view of the entire record as submitted." On appeal from the superior court, we review the record before the Board to determine whether there was substantial evidence to sustain the Board's decision. Id. at 671-72. "A decision is supported by substantial evidence if 'the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" Id. at 675 (quoting World Wide Video, Inc v City of Tukwila, 117 Wn.2d 382, 387, 816 P.2d 18 (1991)). "Review for support by substantial evidence is an extremely limited form of judicial review." Id. (citing Ancheta v Daly, 77 Wn.2d 255, 260, 461 P.2d 531 (1969)).

## RCW 36.93.170 FACTORS

Neighbors argues that the Board erred in determining that the annexation is consistent with the factors set forth in RCW 36.93.170. We disagree.

RCW 36.93.170 sets forth a nonexclusive list of factors the Board must consider in determining whether to approve an annexation proposal. Id. at 672. Those factors are:

> (1) Population and territory; population density; land area
> and land uses; comprehensive plans and zoning, as adopted under

4

chapter 35.63, 35A.63, or 36.70 RCW, comprehensive plans and development regulations adopted under chapter 36.70A RCW, applicable service agreements entered into under chapter 36.115 or 39.34 RCW, applicable interlocal annexation agreements between a county and its cities; per capita assessed valuation; topography, natural boundaries and drainage basins, proximity to other populated areas; the existence and preservation of prime agricultural soils and productive agricultural uses; the likelihood of significant growth in the area and in adjacent incorporated and unincorporated areas during the next ten years; location and most desirable future location of community facilities;

(2) Municipal services; need for municipal services; effect of ordinances, governmental codes, regulations and resolutions on existing uses; present cost and adequacy of governmental services and controls in area; prospects of governmental services from other sources; probable future needs for such services and controls; probable effect of proposal or alternative on cost and adequacy of services and controls in area and adjacent area; the effect on the finances, debt structure, and contractual obligations and rights of all affected governmental units; and

(3) The effect of the proposal or alternative on adjacent areas, on mutual economic and social interests, and on the local governmental structure of the county

RCW 36.93.170. Our Supreme Court has not imposed strict requirements on board decision making based on these factors  King County, 122 Wn.2d at 672. A board's consideration of these factors is sufficient "as long as [the] board stated it had considered the 'factors' and singled several of them out for 'particular attention.'" Id. (quoting King County Water Dist. No. 54 v  King County Boundary Review Bd., 87 Wn.2d 536, 543, 554 P.2d 1060 (1976))

Here, the Board discussed the factors set forth in RCW 36.93.170.  At the Board's August 25 meeting, Chairperson Jackie Rae read the factors to the Board, and board members Alison W. Sing and Mark Beales spoke to several of them.  Specifically, board member Sing noted that the annexation may trigger further annexation in the northern end of the City and that the City planned to

No. 76936-7-I/6

extend sewer services to the area. Board member Sing also recommended that the City update its comprehensive plan and analyze its financial commitment once the annexation is approved. Board member Beales emphasized that both the City and the County have comprehensive plans, that the proposed zoning designation for the annexation is lower than the current county zoning, that the City will provide sewer service to the annexation area, that the City provided "information and details" about municipal services, and that there would be no adverse impact on county finances. The Board then unanimously approved annexation. The Board's findings state that

> [t]he Board considered and discussed all of the factors identified in RCW 36.93.170. The Board found that the City's notice of intention adequately addressed the relevant statutory factors and supports its proposal to annex this area.

The NOI included a lengthy description of how each of the statutory factors was met.

On this record, the requirement that the Board consider the RCW 36.93.170 factors is met because the Board stated that it considered the factors and two members singled out several of the factors for particular attention. That is all that is required. Id. An agency action may be reversed if the appellate court is firmly convinced that a mistake has been committed. Spokane County Fire Prot. Dist. No. 8 v. Spokane County Boundary Review Bd., 27 Wn. App. 491, 498, 618 P.2d 1326 (1980). But we defer to the Board's judgment that the factors were met and conclude that no such mistake was committed here. Id. (citing Hayes v Yount, 87 Wn.2d 280, 286, 552 P.2d 1038 (1976)).

6

Neighbors argues that the Board did not have sufficient information on which to base its evaluation of the annexation proposal against the statutory factors. At oral argument, it argued that the City was required to complete a land use plan prior to approving the annexation and that no such plan was prepared. Neighbors cites the City's comprehensive plan program LU 2.2.1, which states in full:

> PROGRAM LU 2.2.1
> Support annexation proposals that meet the following criteria:
> - The area can be supported with adequate facilities and urban services consistent with capital facilities plans for public facilities and utilities;
> - There is an adopted land use plan for the annexation area;
> - The annexation achieves the growth,(sic) and economic needs and goals for the city as set forth in the comprehensive plan

But nothing in the language of this criteria suggests that it is mandatory or that annexation proposals that do not meet these criteria cannot be approved. And although Neighbors argues that the Board's decision was based on unsupported assumptions because there was no such plan or feasibility study, the record does not support this argument. The certified administrative board record includes the NOI, the County's analysis of the annexation proposal, the materials and minutes of city council meetings where the annexation was discussed, reports from the City's senior planner and city administrator on the annexation proposal, and other relevant information. Additionally, the record on appeal contains transcripts of the testimony presented to the Board for its consideration. It is clear that the Board's decision did not rest on unsupported assumptions.

In its briefing, Neighbors also contends that a feasibility study that addresses the annexation proposal is required by <u>Kittitas County v Eastern Washington Growth Management Hearings Board</u>, 172 Wn.2d 144, 256 P 3d 1193 (2011)  But Neighbors' reliance on <u>Kittitas County</u> is misplaced because that case examined whether a county's comprehensive plan and development code complied with the GMA and did not address any of the statutory requirements for annexation at issue here.

Neighbors points out that during the public hearing on August 18, board member Sing asked questions regarding the anticipated response time of emergency services in the annexation area.  Neighbors claims "[t]he record also demonstrates that there is essentially no plan and little funding available to provide additional or improved governmental services in the near future "  But contrary to this assertion, there is substantial evidence in the record that municipal services were addressed by the City.  For example, after board member Sing's questions, a permit assistant with the City explained that she contacted the fire district and sheriff for the County and those entities confirmed that based on the number of potential houses to be added, there would be no problem with continued services to that area.

Neighbors also argues that the NOI is deceptive because it is not based on the same population growth target or UGA designated by the County and ignores changes to that information reflected in the County's planning documents.  Even so, the annexation area is within the UGA identified in the County's updated plan and the NOI did include the updated population growth

8

target. Most importantly, the Board was aware of the inconsistencies in the city and county planning documents, as indicated when board member Sing stated he "heard in some cases that part of the Sultan comp[rehensive] plan has not been updated." He then advised the City that "some effort be made in that area." The existence of these inconsistencies does not render the Board's consideration of the factors unsupportable as Neighbors suggests.

Neighbors makes various other arguments that the NOI was incomplete or failed to adequately address important factors, including discrepancies in zoning requirements, dependency on county funding for improvements, traffic, short-term and long-term impacts of annexation, tax data, prospective assessed valuations, and the City's existing bond indebtedness. But these issues are normally addressed as part of the development process when the development plan is reviewed by both the City's planning board and a hearing examiner. Neighbors cites no legal authority that these considerations were required to be included in the NOI for the Board to approve the annexation. The only things the Board is required to consider in approving an annexation are the factors in RCW 36.93.170, the objectives in RCW 36.93.180, and the annexation's consistency with the statutes specified in RCW 36.93.157. In considering the factors and approving the annexation, the Board was acting within the sphere of its expertise, and we will not substitute our judgment for that of the Board, despite these claimed deficiencies in the NOI.

Finally, Neighbors argues that the Board failed to "actively" consider the factors because there was opposing evidence and testimony that was "informed,

specific, and verifiable." But the existence of differing opinions on the annexation does not mean that the Board failed to adequately consider the factors or that the decision was not supported by substantial evidence. Rather, the record shows that the Board listened to the testimony provided, asked questions, and then, during its deliberation, cautioned the City as to some of the issues raised during the public hearing. Neighbors' argument to the contrary is not persuasive.

## RCW 36.93.180 OBJECTIVES

Neighbors argues that by approving the annexation, the Board failed to fulfill its duty to attempt to achieve the statutory objectives of RCW 36.93.180. We disagree.

RCW 36 93.180 sets forth the following nine objectives the Board "shall attempt to achieve":

> (1) Preservation of natural neighborhoods and communities;
> (2) Use of physical boundaries, including but not limited to bodies of water, highways, and land contours;
> (3) Creation and preservation of logical service areas;
> (4) Prevention of abnormally irregular boundaries;
> (5) Discouragement of multiple incorporations of small cities and encouragement of incorporation of cities in excess of ten thousand population in heavily populated urban areas;
> (6) Dissolution of inactive special purpose districts;
> (7) Adjustment of impractical boundaries;
> (8) Incorporation as cities or towns or annexation to cities or towns of unincorporated areas which are urban in character; and
> (9) Protection of agricultural and rural lands which are designated for long term productive agricultural and resource use by a comprehensive plan adopted by the county legislative authority.

"Unlike the 'factors' listed in RCW 36.93.170, these 'objectives' are more than simply aspirational." King County, 122 Wn.2d at 673 (citing Spokane County Fire Prot. Dist. No. 9 v. Spokane County Boundary Review Bd., 97 Wn.2d 922, 926,

10

652 P.2d 1356 (1982). A decision that fails to achieve any of these objectives is reversible. Id. (citing Spokane County, 97 Wn.2d at 926; City of Richland v. Franklin County Boundary Review Bd., 100 Wn 2d 864, 870, 676 P.2d 425 (1984)). "At least one [objective] must be achieved for the Board's decision to be affirmed." City of Richland, 100 Wn 2d at 870 (citing Spokane County, 97 Wn.2d at 926).

"The question on review is not whether the objectives were advanced or hindered, but rather whether substantial evidence in the record supports a board's decision regarding the achievement of the objectives." King County, 122 Wn.2d at 675. Under this standard, we consider each of the statutory objectives to determine whether substantial evidence supports the Board's conclusion that the objectives were furthered by the annexation. Id.

Here, the Board found that objectives 1, 2, 3, 4, and 7 were furthered and that objectives 5, 6, 8, and 9 did not apply. Neighbors contends that objectives 1, 2, 3, 4, 7, and 8 are hindered by annexation. The contested objectives are addressed below.

The first objective (preservation of natural neighborhoods and communities) is satisfied if there is substantial evidence that the annexation area is geographically part of the Sultan community. Id. at 676. Here, the Board found that "the proposal maintains natural neighborhoods and communities." Additionally, there is evidence that the annexation area is located adjacent to Rosewood, an existing city neighborhood, and that it is within the City's UGA

11

This constitutes substantial evidence that the first objective is furthered by annexation.

Neighbors challenges the Board's conclusion on the first objective, arguing that there was overwhelming testimony that the annexation and eventual development of the area will be contrary to the residents' rural lifestyles. But because the evidence cited above is sufficient to persuade a fair-minded person that the first objective is met, the existence of contrary evidence does not require reversal. Id. at 675-76.

To support the second objective (use of physical boundaries), there must be substantial evidence that the annexation employs physical boundaries, not just legal boundaries, such as lot lines. Id. at 677 (citing Spokane County, 97 Wn.2d at 927 n.1). Here, there was evidence that the annexation area is bordered by existing city limits on the west and southwest sides, by 124th Street on the entire southern edge, and land reserved by the Department of Natural Resources to the north  Additionally, a city representative testified that the northern and eastern borders of the annexation area both follow the tree line. Again, this evidence is sufficient to persuade a fair-minded person that the second objective is met.

Neighbors argues that the tree lines do not follow the annexation area boundary, and therefore, the true boundary line is the legal boundary, which is improper. But it does not cite to any evidence in the record showing that the tree line does not follow the boundary. Given the other evidence of physical

12

boundaries, substantial evidence supports the Board's conclusion that the second objective was furthered.

The third objective (creation and preservation of logical service areas) can be satisfied by showing that the annexation area is within current municipal service areas, such as water or fire service areas, or that an extension of services to the area would logically further the existing service areas. King County, 122 Wn.2d at 676. Here, the Board found that "[t]he proposal is contiguous to the City's current municipal boundaries and lies fully within the City's Urban Growth Area." There is evidence in the record that the City's water treatment plant is immediately west of the annexation area, providing water supply access. Although there were concerns that the current sewer system was at capacity, the Board heard testimony that the City was pursuing grants to increase capacity and would not approve development in the annexation area unless the sewer system and traffic capacity issues are resolved. This evidence constitutes substantial evidence that the third objective is met.

Neighbors contends that the third objective is hindered because the annexation will create an illogical service boundary that is separated by part of the UGA, there is no guarantee that sewer will be extended to the annexation area, and the annexation proposal did not contemplate transit services. But given the evidence in the record, substantial evidence supports the Board's conclusion that the third objective was furthered by annexation.

The focus of the fourth objective (prevention of abnormally irregular boundaries) is "not on whether the annexation boundaries are straight or

13

crooked, but rather whether a proposed annexation causes or prevents unnatural projections or odd, impractical shapes." Id. at 678. The Board concluded that the annexation "brings in a portion of the City's Urban Growth Area thus preventing and correcting any irregular boundaries " Neighbors argues that the annexation simply serves to enlarge the existing irregular boundary. Because the annexation will not make the boundary abnormally irregular, the Board did not err in finding this objective satisfied. Furthermore, the same reasoning supports the Board's finding that the seventh objective (adjustment of impractical boundaries) is furthered because the annexation will essentially fill in areas of the City that were already part of the UGA.

Finally, Neighbors takes issue with the Board's determination that the eighth objective (annexation to cities of unincorporated areas which are urban in character) does not apply. The Board found that this objective did not apply because "the area is considered more rural for long term planning purposes." Neighbors states that "[i]t is inconsistent with the plain language of the statute to determine it does not apply on the basis that the proposal hinders the objective rather than furthering it." This distinction is well taken. But even assuming that Neighbors is correct and that the annexation of this "rural" area hinders the eighth objective, the Board did not err in finding that the objectives, as a whole, were achieved.

Overall, the Board found that five objectives were furthered by annexation and four were not applicable Although "substantial evidence review of boundary review board decisions is not merely an exercise in counting objectives," our

14

Supreme Court has held that the objectives are met when two are significantly furthered, three are not furthered or hindered, and one is hindered. Id. at 680. Here, where five objectives are furthered and three do not apply, even if one is hindered, substantial evidence still supports the Board's conclusion that the objectives are furthered as a whole.

## CONSISTENCY WITH GMA

Neighbors argues that the Board failed to satisfy the requirement that its decision on annexation be consistent with the GMA, as required by RCW 36.93 157. We disagree.

RCW 36.93.157 states, "The decisions of a boundary review board located in a county that is required or chooses to plan under RCW 36.70A.040 must be consistent with RCW 36.70A 020, 36.70A.110, and 36.70A.210." The referenced statutes address, respectively, the goals of the GMA, urban growth area requirements under the GMA, and countywide policy plans adopted by the County under the GMA.

Here, the Board entered specific findings regarding its determination that the annexation was consistent with the GMA:

> This decision is consistent with RCW 36.70A 020, as all planning goals were discussed and considered either during public testimony, deliberation, or as part of the written documentation. The Board's decision to approve the annexation is consistent with RCW 36.70A.020(1) because development will occur within an urban growth area, RCW 36.70A.020(5) because economic development consistent with adopted comprehensive plans will be encouraged, RCW 36.70A 020(9) because open space and recreation will be encouraged, RCW 36.70A.020(10) because the environment will be protected and enhanced, RCW 36.70A.020(11) because the City did perform a comprehensive citizen participation effort designed to inform the public about the annexation and its

15

effect on the residents in the proposed annexation area, and with RCW 36.70A.020(12) because the City will provide for public facilities and services.

The decision is consistent with RCW 36.70A.110 because the City and County both have adopted comprehensive plans.

The decision is consistent with RCW 36.70A.210 in that the annexation proposal is generally consistent with Snohomish County county-wide planning policies OD-1 to promote development within urban growth areas; OD-2 to allow development within the incorporated and unincorporated portions of the UGA, and OD-9 to develop comprehensive plans, policies, and development regulations providing for the orderly transition of unincorporated to incorporated areas within [the] UGA.

Neighbors first asserts that the annexation is not consistent with the County's comprehensive plan and the County's planning policies because the City's comprehensive plan has not been updated to reflect the County's reduction in UGA or population growth. As discussed above, the annexation area is still within the UGA identified in the County's updated plan, the NOI did include the updated population growth target, and most importantly, the Board was aware of the discrepancies when it determined that annexation is consistent with the GMA Therefore, even though the city and county plans differ, the Board analyzed the annexation's consistency with the GMA, using relevant information from the County's most recent comprehensive plan.

Neighbors next takes issue with the Board's conclusion that annexation is consistent with RCW 36.70A.110 because both the City and the County have adopted comprehensive plans. Neighbors argues that the plain language of the requirement "is more expansive and more specific," but it does not explain what additional analysis is necessary. RCW 36.70A.110 details the urban growth area requirements under the GMA. Because the annexation area is already located in

16

the UGA under both the city and the county plans, this requirement appears to be met. Neighbors' argument that the annexation area should not be annexed because growth should be directed to areas already characterized by urban growth ignores the fact that the City and the County have previously designated the annexation area as meeting the requirements for a UGA. This is an area designated for growth by both entities. The annexation is consistent with that designation.

Neighbors also argues that the annexation is not consistent with the goals of the GMA, which are described by RCW 36.70A.020 and include (1) urban growth, (2) reducing sprawl, (3) transportation, (4) housing, (5) economic development, (6) property rights, (7) permits, (8) natural resource industries, (9) open space and recreation, (10) environment, (11) citizen participation and coordination, (12) public facilities and services, and (13) historic preservation. Neighbors contends that the annexation is not consistent with goals 1, 2, 3, 4, 11, and 12. The Board found that 6 of the 12 goals were satisfied: 1, 5, 9, 10, 11, and 12. Neighbors does not address goals 5, 9, or 10.

Here, the annexation area is within the UGA, which ensures that annexation is consistent with urban growth and therefore consistent with the first goal. Furthermore, there was substantial public participation in the annexation decision and substantial evidence that services such as sewer and water would be provided by the City, while fire and sheriff services would be provided by the County. The Board did not err in finding that the eleventh goal (citizen

17

participation and coordination) and the twelfth goal (public facilities and services) were satisfied

The Board did not specifically address whether goals 2, 3, or 4 are satisfied by annexation in its findings. Neighbors argues that the Board simply ignored these goals because they are not consistent with the annexation proposal. It claims that annexation is not consistent with these goals because the Board evaluated the annexation proposal based on what "could happen" if development occurs in the future and not on "the extent of facilities and services necessary to serve a certain identified future population." But this distinction is not persuasive Even without findings by the Board on these goals, the second goal (reducing sprawl) is likely satisfied because the annexation area is fully within the UGA, which has been designated as an area for development that will help reduce sprawl. Additionally, the annexation and proposed development will make housing available for the projected population increase from 4,969 people in 2014 to 8,393 people in 2035, consistent with the fourth goal (housing).

Admittedly, the annexation may not be consistent with the third goal (transportation) given the evidence presented to the Board regarding traffic problems currently existing on Sultan Basin Road and Highway 2, including heavy traffic and no sidewalks. The Board members acknowledged as much in their deliberations. Even so, there is no requirement that the annexation further all goals of the GMA, just that it be "consistent with" those goals. RCW 36.93.157. Substantial evidence supports the Board's determination that the annexation is consistent with these goals as a whole.

18

Finally, Neighbors argues that the Board's finding that the annexation is consistent with RCW 36.70A.210 is clearly erroneous because the record does not include the county policies referenced in its findings. OD-1, OD-2, and OD-9. It cites no authority for the proposition that failure to include these documents in the record makes the finding clearly erroneous. But more importantly, Neighbors does not assert that the annexation is inconsistent with these policies. As such, it has not shown that the Board's decision was clearly erroneous.

We affirm

Smith, J.

WE CONCUR:

Applewick, C.J.